~~SEALED BY ORDER OF COURT~~

# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN JOSE

---

UNITED STATES OF AMERICA,

V.



FILED

AUG 15 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ANTHONY SCOTT LEVANDOWSKI,

## CR 19 00377

LHK
SVK

DEFENDANT(S).

---

# INDICTMENT

18 U.S.C. § 1832(a)(1), (2), (3) & (4) – Theft and Attempted Theft of Trade Secrets;
18 U.S.C. §§ 1843 and 2323 – Criminal Forfeiture.

_A true bill._

_____
Foreman

Filed in open court this _____15_____ day of _____August 2019_____

_____.

Nathanael Cousins,
Clerk
U.S. Magistrate Judge

Bail, $ _____no bail arrest warrant_____

DOCUMENT NO.

1   CJC

DISTRICT COURT
CRIMINAL CASE PROCESSING

SEALED BY ORDER OF COURT

FILED

AUG 15 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11  UNITED STATES OF AMERICA,            ) Case No.  CR 19 00377 LHK SVK
                                         )
12         Plaintiff,                     ) VIOLATIONS: Title 18, United States Code,
                                         ) Sections 1832(a)(1), (2), (3) & (4) – Theft and
13     v.                                 ) Attempted Theft of Trade Secrets; Title 18, United
                                         ) States Code, Sections 1843 and 2323 – Criminal
14  ANTHONY SCOTT LEVANDOWSKI,           ) Forfeiture.
                                         )
15         Defendant.                     ) San Jose Venue
                                         )
16  _____)

17

18                            I N D I C T M E N T

19  The Grand Jury charges:

20                          Introductory Allegations

21         1.     In or about 2009, Google Inc. ("Google") began a self-driving car project known within

22  the company as Project Chauffeur.  Google employees working on Project Chauffeur designed and

23  developed both the hardware and software necessary for fully autonomous vehicles.  Self-driving

24  vehicles, and many of their component parts, were intended for use in interstate commerce.  At all times

25  relevant to this Indictment, Google owned all of the Project Chauffeur intellectual property, including

26  but not limited to, the trade secrets at issue.  Google was headquartered, and Project Chauffeur

27  maintained offices in, Mountain View, California.

28         2.     In December 2016, after the events outlined in this Indictment, Project Chauffeur became

1 | Waymo, a stand-alone company with over 600 employees.  Waymo operated alongside Google and
2 | other technology companies under the umbrella of Alphabet Inc.

3 |      3.     Uber Technologies, Inc. ("Uber") began as a ridesharing app in or about 2009.  By 2015,
4 | Uber had expanded its business to include food delivery and other logistics.  That same year, Uber
5 | began investing in autonomous vehicle technologies.  At all times relevant to this Indictment, Uber was
6 | headquartered in San Francisco, California.

7 |      4.     Anthony LEVANDOWSKI joined Google as an engineer in or about April 2007.  He was
8 | one of the founding members of Project Chauffeur.  In or about 2007, 2009, and 2012,
9 | LEVANDOWSKI signed employment agreements with Google.  Each employment agreement
10 | contained, among other provisions, a Confidential Information paragraph, which obligated
11 | LEVANDOWSKI to hold Google's Confidential Information, including trade secrets, in confidence.
12 | On or about January 27, 2016, LEVANDOWSKI resigned from Google without notice.  At the time of
13 | his departure, LEVANDOWSKI was in charge of the Light Detection and Ranging (LiDAR)
14 | engineering team within Project Chauffeur.

15 |      5.     Without disclosing it to Google, in or about the spring of 2012, LEVANDOWSKI
16 | participated in the formation of a LiDAR company later incorporated as Odin Wave LLC ("Odin
17 | Wave").  Odin Wave had a handful of employees and offices in Berkeley, California.  The company
18 | worked to develop a high-accuracy mapping LiDAR sensor.  In or about late 2013, Odin Wave began
19 | doing business as Tyto LiDAR LLC ("Tyto") and moved to offices in San Leandro, California.
20 | Paperwork formalizing the name change was filed in or about February 2014.  By 2015, Tyto was
21 | attempting to market its LiDAR technology to self-driving companies, including Uber.

22 |      6.     No later than in or about September 2015, LEVANDOWSKI decided to leave Google
23 | and form a new self-driving company.  LEVANDOWSKI's new company was initially called 280
24 | Systems, Inc. but later changed its name to Ottomotto Inc. ("Ottomotto").  In or about fall 2015,
25 | LEVANDOWSKI began having discussions with executives at Uber regarding Uber potentially making
26 | an investment in or acquiring Ottomotto.  Those negotiations intensified in December 2015 and January
27 | 2016, with Uber and Ottomotto signing a term sheet in February 2016.

28 |      7.     On or about April 11, 2016, Uber's Board of Directors approved the Uber/Ottomotto

1    transaction.  Shortly thereafter, Ottomotto acquired Tyto.  Uber's acquisition of Ottomotto closed in

2    August 2016.  (By the time of the acquisition, Ottomotto had been re-incorporated as Ottomotto LLC

3    and Otto Trucking LLC.)

The Technology

5        8.    The technology and information at issue involved the research, development, and

6    production of LiDAR technology for self-driving vehicles.  A LiDAR sensor is typically mounted on the

7    exterior of a self-driving vehicle.  It works by sending out an array of high-power, pulsing lasers into the

8    surrounding environment.  The laser beams bounce off surrounding objects and return to the sensor,

9    which measures the qualities of the return signals to determine the size, shape, and distance of

10   surrounding objects.  Self-driving companies have used LiDAR for critical functions, including but not

11   limited to, mapping and perception.  For mapping, LiDAR can be used to create a three-dimensional

12   map of the static environment in which the vehicle will operate.  Regarding perception, LiDAR

13   dynamically detects what is happening around a vehicle as it travels through the previously mapped

14   environment.  In real time, it provides information to the vehicle about other vehicles, pedestrians, and

15   obstacles on the road.

16       9.    Through years of research and testing, and millions of dollars in investment, Project

17   Chauffeur developed its own customized LiDAR systems.  Those custom systems were used for both

18   mapping and perception and consisted of thousands of individual hardware and software components.

19   The success of the LiDAR effort was critical to the overall success of Project Chauffeur.  Moreover,

20   having custom LiDAR, as opposed to commercially available LiDAR, was a key differentiator between

21   Project Chauffeur and its competitors in the 2015 and 2016 timeframe.

22       10.   The Google employees working on Project Chauffeur used secure, password-protected

23   repositories to store their files, with access available to employees in the course of their job

24   responsibilities, as authenticated by valid user credentials.  Project Chauffeur's repositories included the

25   following:

26       a.   SVN: Project Chauffeur engineers used computer-assisted design (CAD) software to

27           design hardware, including custom LiDAR.  CAD files, including circuit board drawings and

28           schematics, were housed on a subversion, or SVN, server hosted on Google's network.  To

INDICTMENT                                3

access SVN, Project Chauffeur employees had to email the SVN administrator to request a username and password.

b. <u>Google Drive</u>: The Project Chauffeur team used Google's corporate drive as a repository for non-CAD files, such as presentations and spreadsheets. Only Google employees could access this Drive, after authentication of their credentials on the Google network.

11.     In the months before his departure from Google, LEVANDOWSKI downloaded thousands of Project Chauffeur files. On or about December 11, 2015, he downloaded approximately 14,000 files from SVN. These files contained critical engineering information about the hardware used on Project Chauffeur self-driving vehicles, including schematics for the printed circuit boards used in various custom LiDAR products. On or about December 14, 2015, LEVANDOWSKI transferred the SVN files from his Google laptop to his personal laptop. Additionally, between in or about October 2015 and January 2016, LEVANDOWSKI downloaded, directly to his personal laptop, at least 20 files from the Google Drive, including instructions for calibrating and tuning Google's custom LiDAR and an internal tracking document setting forth, among other things, technical goals for each team within Project Chauffeur.

COUNTS ONE THROUGH THIRTY-THREE: (18 U.S.C. §§ 1832(a)(1), (2), (3) & (4) – Theft and Attempted Theft of Trade Secrets)

12.     The allegations contained in Paragraphs 1 through 11 are realleged and incorporated as if fully set forth herein.

13.     On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

ANTHONY SCOTT LEVANDOWSKI,

intending to convert a trade secret that was related to a product and service used in and intended for use in interstate and foreign commerce to the economic benefit of anyone other than the owner of that trade secret, and knowing and intending that the offense would injure the owner of that trade secret, as specifically alleged in each of Counts One through Thirty-three below:

a.     knowingly stole, and without authorization appropriated, took, carried away, concealed,

and by fraud, artifice, and deception obtained trade secrets belonging to Google, and attempted

to do so;

      b.  knowingly and without authorization copied, duplicated, sketched, drew, downloaded,

uploaded, altered, photocopied, replicated, transmitted, delivered, sent, communicated, and

conveyed trade secrets belonging to Google and attempted to do so; and

      c.  knowingly and without authorization received, bought, and possessed trade secrets

belonging to Google, and attempted to do so, knowing the same to have been stolen and

appropriated, obtained, and converted without authorization:

| Count | Date | File Name | Description | Source |
|---|---|---|---|---|
| One | 12-11-15 | projects/Laser/GBr/gbr-laser-module/3-1-0/gbr-laser-moduleA-3-1-0/laserA.PcbDoc | Transmit Block Configuration | SVN |
| Two | 12-11-15 | projects/Laser/GBr/gbr-laser-module/3-1-0/gbr-laser-moduleB-3-1-0/laserB.PcbDoc | Transmit Block Configuration | SVN |
| Three | 12-11-15 | projects/Laser/GBr/gbr-laser-module/3-1-0/gbr-laser-moduleC-3-1-0/laserC.PcbDoc | Transmit Block Configuration | SVN |
| Four | 12-11-15 | projects/Laser/GBr/gbr-laser-module/3-1-0/gbr-laser-moduleD-3-1-0/laserD.PcbDoc | Transmit Block Configuration | SVN |
| Five | 12-11-15 | projects/Laser/GBr/gbr-laser-module/3-1-0/gbr-laser-moduleE-3-1-0/laserE.PcbDoc | Transmit Block Configuration | SVN |
| Six | 12-11-15 | projects/Laser/GBr/gbr-laser-module/3-1-0/gbr-laser-moduleF-3-1-0/LsrBrdF.PcbDoc | Transmit Block Configuration | SVN |
| Seven | 12-11-15 | projects/Laser/GBr/gbr-motherboard/gbr-motherboard_3-0-0/receiver.SchDoc | Receiver Schematic and Structure | SVN |
| Eight | 12-11-15 | projects/Laser/GBr/gbr-motherboard/gbr-motherboard_3-0-0/DAC_rcvr.SchDoc | Receiver DAC Circuit | SVN |
| Nine | 12-11-15 | projects/Laser/GBr/gbr-motherboard/gbr-motherboard_3-0-0/flop.SchDoc | Receiver Flip-flop Circuit | SVN |
| Ten | 12-11-15 | projects/Laser/GBr/gbr-motor/gbr-motor_2-5-0/gbr-motor.PcbDoc | Motor Design | SVN |
| Eleven | 12-11-15 | projects/Laser/PBr/pbr-motor-pcb/pbr-motor-pcb_1-1-4/pbr-motor.PcbDoc | Motor Design | SVN |

| Twelve | 12-11-15 | projects/Laser/PBr/pbr-flex-clock/pbr-flex-clock_1-4-1/pbr-flex-clock.PcbDoc | Use and Structure of a Flex PCB | SVN |
|---|---|---|---|---|
| Thirteen | 12-11-15 | projects/Laser/PBr/pbr-receiver/pbr-receiver_1-4-1/apd.SchDoc | APD Circuit Design | SVN |
| Fourteen | 12-11-15 | projects/Laser/PBr/pbr-motherboard-1-14-0/receiver.SchDoc | Receiver Schematic and Structure | SVN |
| Fifteen | 12-11-15 | projects/Laser/PBr/pbr-motherboard/pbr-motherboard-1-14-0/DAC_rcvr.SchDoc | Receiver DAC Circuit | SVN |
| Sixteen | 12-11-15 | projects/Laser/PBr/pbr-motherboard/pbr-motherboard-1-14-0/flop.SchDoc | Receiver Flip-flop Circuit | SVN |
| Seventeen | 12-11-15 | projects/Laser/PBr/pbr-motherboard/pbr-motherboard-1-14-0/APD_BIAS.SchDoc | APD Circuit Design | SVN |
| Eighteen | 12-11-15 | projects/Laser/KBr/kbr-motherboard/kbr-motherboard-1-5-0/pulse_shaper.SchDoc | Pulse Control Circuit | SVN |
| Nineteen | 12-11-15 | projects/Laser/TBr/tbr-motherboard/tbr-motherboard_4-2-0/receiver.SchDoc | Receiver Schematic and Structure | SVN |
| Twenty | 12-11-15 | projects/Laser/TBr/tbr-motherboard/tbr-motherboard_4-2-0/DAC_rcvr.SchDoc | Receiver DAC Circuit | SVN |
| Twenty-one | 12-11-15 | projects/Laser/TBr/tbr-motherboard/tbr-motherboard_4-2-0/flop.SchDoc | Flip-flop Circuit | SVN |
| Twenty-two | 12-11-15 | projects/Laser/YBr/ybr-pulser/ybr-pulser_1-1-0/driver.SchDoc | Laser Pulse Driver Design | SVN |
| Twenty-three | 12-11-15 | projects/Laser/YBr/ybr-rx-module/ybr-rx-module_1-0-0/ybr-rx_module.SchDoc | Receiver Module Design | SVN |
| Twenty-four | 12-11-15 | projects/Laser/BBr/bbr-motherboard/bbr-motherboard_1-0-0/driver.SchDoc | Laser Pulse Driver Design | SVN |
| Twenty-five | 12-11-15 | projects/Laser/CBr/laser_module_test/laser_module_test_1-0-2B/laser.SchDoc | Laser Pulser Circuit Schematic | SVN |
| Twenty-six | 12-11-15 | projects/Laser/CBr/laser_module_test/spice_sim/laser_module_1-0-1.asc | Simulation Models for Laser Pulser Circuit | SVN |
| Twenty-seven | 11-19-15 | Google Fiber Laser for Lidar | Presentation re Project Chauffeur's Unique Fiber Laser Design | Google Drive |

| Twenty-eight | 12-18-15 | Thermal Rotary Coupling | Presentation re LiDAR Engineering Issue | Google Drive |
|---|---|---|---|---|
| Twenty-nine | 01-04-16 | PBR Intensity Calibration | Instructions for how to calibrate long-range LiDAR intrinsic properties once it is installed on vehicle | Google Drive |
| Thirty | 01-04-16 | Pbr Extrinsic Calibration | Instructions for how to calibrate long-range LiDAR to function properly with mid-range LiDAR on vehicle | Google Drive |
| Thirty-one | 01-04-16 | Tx and Rx tuning Instructions | Instructions for checking that the laser in the long-range LiDAR is positioned correctly and meets certain criteria | Google Drive |
| Thirty-two | 01-04-16 | TBR TESTING STATION | Manual for various quality control tests and assembly steps to be performed on short-range LiDAR during manufacturing | Google Drive |
| Thirty-three | 01-11-16 | Chauffeur TL weekly updates - Q4 2015 | Internal Project Chauffeur Tracking and Planning Document | Google Drive |

Each in violation of Title 18, United States Code, Sections 1832(a)(1), (2), (3) & (4).

FORFEITURE ALLEGATION:  (18 U.S.C. §§ 1834 and 2323 – Proceeds and Property Involved in Theft of Trade Secrets)

14.     The allegations contained in Counts One through Thirty-three of this Indictment are hereby realleged and incorporated as if fully set forth here.  Upon conviction of any of those offenses, the defendant,

ANTHONY SCOTT LEVANDOWSKI,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 1834 and 2323, any property used, or intended to be used, in any manner or part to commit or facilitate the

INDICTMENT                                        7

1  commission of the offenses, and any property constituting or derived from any proceeds obtained

2  directly or indirectly as a result of the commission of the offenses.

3        15.     If any of the property described above, as a result of any act or omission of the defendant:

4          a.     cannot be located upon the exercise of due diligence;

5          b.     has been transferred or sold to, or deposited with, a third party;

6          c.     has been placed beyond the jurisdiction of the court;

7          d.     has been substantially diminished in value; or

8          e.     has been commingled with other property which cannot be divided without

9        difficulty,

10  the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

11  United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b).

12        All pursuant to Title 18, United States Code, Sections 1834 and 2323.

14  DATED: 8-15-19

                               A TRUE BILL.

                               FOREPERSON

18  DAVID L. ANDERSON
United States Attorney

20  KATHERINE L. WAWRZYNIAK
ANDREW F. DAWSON
AMIE D. ROONEY
Assistant United States Attorneys

INDICTMENT                     8

AO 257 (Rev. 6/78)

~~SEALED BY ORDER~~
~~OF COURT~~

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

### OFFENSE CHARGED

18 U.S.C. § 1832(a)(1), (2), (3) & (4) – Theft and Attempted Theft of Trade Secrets; and
18 U.S.C. §§ 1843 and 2323 – Criminal Forfeiture.

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  Maximum Penalties (per Count):
10 years imprisonment;
$250,000 fine, or twice the gross gain/loss;
$100 special assessment; and
3 years' supervised release.

⊞

### DEFENDANT - U.S

▶ Anthony Scott Levandowski

DISTRICT COURT NUMBER

CR **19 00377** LHK SVK

### DEFENDANT

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

FILED

IS IN CUSTODY

4) ☐ On this charge

AUG 15 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO. }

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO. }

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under }

Name and Office of Person Furnishing Information on this form     DAVID L. ANDERSON

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)     Katherine L. Wawrzyniak

Has detainer been filed? ☐ Yes   ☐ No

If "Yes" give date filed }

DATE OF ARREST ▶     Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶     Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT    Bail Amount: No bail

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:     Before Judge:

Comments: