Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | **No. CR 19-377 WHA** |
| | ) | |
| ANTHONY LEVANDOWSKI, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | San Francisco, California |
| | | Tuesday, October 29, 2019 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          DAVID L. ANDERSON
                        UNITED STATES ATTORNEY
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                   BY:  **KATHERINE L. WAWRZYNIAK**
                        **ANDREW F. DAWSON**
                        **AMIE D. ROONEY**
                        **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:          RAMSEY & EHRLICH LLP
                        803 Hearst Avenue
                        Berkeley, California 94710
                   BY:  **MILES EHRLICH, ESQ.**
                        **ISMAIL RAMSEY, ESQ.**

Reported by:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
               Official Reporter - U.S. District Court

<u>**Tuesday - October 29, 2019**</u>                          <u>**9:20 a.m.**</u>

## P R O C E E D I N G S

---oOo---

**THE CLERK:**  Calling criminal action 19-377,

United States versus Anthony Scott Levandowski.

Counsel, please step forward and state your appearances

for the record.

**MS. WAWRZYNIAK:**  Good morning, Your Honor.  Katherine

Wawrzyniak, Andrew Dawson, and Amie Rooney for the

United States.

**MS. ROONEY:**  Good morning, Your Honor.

**THE COURT:**  Welcome.

**MR. EHRLICH:**  Good morning, Your Honor.  Miles Ehrlich

and Ismail Ramsey, along with Mr. Levandowski who is present

and will be seated at counsel table.

**THE COURT:**  Okay.  Welcome, Mr. Levandowski.  Welcome,

counsel.

Now, are you in the case for good, or are you still

specially appearing?

**MR. EHRLICH:**  We are still specially appearing as of

today, Your Honor.

**THE COURT:**  You've had plenty of time to work out your

deal.

**MR. EHRLICH:**  I might fall on the assistance of my

able co-counsel to address this matter.

1          **THE COURT:**  All right.  Go ahead.  Tell me.  We need

2    to make sure he has counsel and it's not going to disrupt

3    things.

4          **MR. RAMSEY:**  Good morning, Your Honor.

5          Yes, we've been appearing before Judge Cousins about this

6    issue.  We were actually before him last Wednesday.  And we

7    believe -- we have an agreement in principle.  There is a

8    certain amount of time that we have to provide to our client to

9    review the agreement with the independent counsel.

10         So we had provided the agreement just the day before we

11   went last week.  We have a minor tweak that he now has, so he's

12   just providing us time to do that.  But we fully expect to have

13   this completed within the next week.

14         We are on for a status in front of Judge Cousins for next

15   Wednesday.

16         **THE COURT:**  Well, let's do this.  That's good to hear.

17   If it's not totally resolved by next Wednesday, then please

18   send me a letter on Thursday so that I can put it back on

19   calendar to bring you in to see what needs to be done, okay.

20         **MR. RAMSEY:**  Yes, Your Honor.

21         **THE COURT:**  All right.  But I'm going to hope for the

22   best that it's all resolved by then.

23         **MR. EHRLICH:**  Your Honor, just also I want to add, we

24   have been proceeding with diligence and speed as if we are in

25   on the case because we have an interest in moving the case in a

1    speedy fashion.

2         **THE COURT:**  I figured that was the case, but I thank

3    you for saying it.

4         Okay.  We're here mainly to go over the schedule; right?

5         **MS. WAWRZYNIAK:**  Yes, Your Honor.

6         **THE COURT:**  So what does the Government say to

7    Mr. Ehrlich's contentions about the schedule?  I know you want

8    to keep the trial date that I proposed, but what do you say to

9    his reasons?

10        **MS. WAWRZYNIAK:**  To his reasons, Your Honor?

11        **THE COURT:**  Yeah, the reasons that are given.

12        Mainly he blames you, saying that you haven't produced

13   everything yet and that, moreover, you've produced a lot of

14   material already and there's more to come, and it's going to

15   take a long time to review all of that and prepare the defense.

16        **MS. WAWRZYNIAK:**  Well, so let me talk first about

17   discovery, Your Honor.  We have been producing on a rolling

18   basis ever since September.  There have been five productions

19   to date.  We've produced 151 gigabytes of data.  And contrary

20   to what's in defendant's papers, that is the bulk of the

21   Rule 16 discovery.

22        We ran some reports yesterday and determined that there's

23   approximately 45 gigabytes of data left to produce.  So

24   that's -- all the material that the Government has in its

25   possession is roughly 200 gigabytes of data.

1          And then, separately, there's a third party Your Honor is

2    probably familiar with, Stroz Friedberg, that had a database of

3    material.  And we just arranged for Stroz Friedberg to produce

4    those materials directly to defense counsel.

5          My understanding is that defense counsel previously had

6    access to that same repository of materials during the civil

7    case.

8          So I think that while discovery in this case is

9    significant, it is not as voluminous as defense counsel has

10   indicated.  We do not believe that it's over 300 gigabytes of

11   data or millions of pages.

12         I would also state, with respect to the trial date, that

13   in the related civil matter, *Waymo v. Uber*, that did proceed to

14   trial in approximately one year.

15         We are on target to complete our production of Rule 16

16   discovery by the end of November.  That would exclude materials

17   that are not yet in our possession, things like reports that

18   are yet to be generated, we gather additional materials that we

19   have to turn over within 14 days.

20         But assuming that discovery is complete by the end of

21   November, that gives defendant ten months to go through the

22   materials and to prepare for trial.  We think that that is

23   completely reasonable, particularly given the history of this

24   case.

25         Criminal defense lawyers did appear in the civil action in

1   April of 2017, so they have lived with this case for awhile.

2   And this defendant -- you know, there are technical aspects to

3   this case, of course.  We have alleged 33 trade secrets.  But

4   the defendant does understand the underlying technology and is

5   well-situated to help his lawyers prepare an adequate defense.

6       So from the Government's perspective, the September 2020

7   trial date is eminently reasonable.  And, in general, we are

8   interested in pushing this case towards resolution as quickly

9   as possible.

10      **THE COURT:**  Thirty-three trade secrets, are they

11  specifically identified trade secrets or are they sort of

12  generically generally identified?

13      **MS. WAWRZYNIAK:**  We've had meet and confers on this

14  topic.  The Government believes that they are specifically

15  identified.

16      The indictment gives specific file names and then, also, a

17  brief description of the specific technology within the

18  document that's alleged to be valuable and to meet the test of

19  the trade secret.

20      The indictment, importantly, also alleges attempt as an

21  alternate means of violation of the statute.  And under the

22  Ninth Circuit jury instructions, when the Government has

23  alleged attempt, the Government does not have to actually prove

24  that the materials are, in fact, a trade secret.  It's enough

25  to show that the defendant reasonably believed that they were a

1    trade secret when he took them with the intent to convert them

2    for his own or someone else's economic benefit.

3         THE COURT:  Is that what the Ninth Circuit, the court

4    of appeals has held, or is that the form instruction?

5         MS. WAWRZYNIAK:  It's the form instruction, but it

6    comes, Your Honor, from *United States versus Nosal* and

7    *United States versus Liu*, two trade secret cases that arose out

8    of this district.

9         MR. EHRLICH:  Your Honor, can I address that?

10        If the Government is going to proceed on a theory that

11   they are not required to prove that the 33 trade secrets

12   they've charged are trade secrets, then maybe that would --

13   there would be an argument there.  But the charges as they

14   exist are theft of -- or possession, illegal possession of

15   trade secrets, and they've also added an attempt language.

16        So presumably they intend to prove that these are trade

17   secrets and would be required to provide the level of

18   specificity that would enable the defense to determine what the

19   boundaries and contours are of the particular information that

20   they contend to be meeting the test of trade secret.

21        THE COURT:  Well, what do you say -- let's focus on

22   that problem for a moment.

23        MR. EHRLICH:  Yeah.

24        THE COURT:  What is the law on the degree of

25   specificity that must be proven at trial?  Let's just take it

1    at trial first.  What does the law say there?

2         **MR. EHRLICH:**  So I don't want to express too much

3    confidence.  I did not come today ready to give a discourse on

4    exactly what the law says in all of its complexity.

5         My understanding is that the burden is to show that

6    particular information is reasonably protected as secret and

7    not readily ascertainable in the relevant industry, and that

8    the information in question has to derive independent economic

9    value from not being known or readily ascertainable.

10        So even to undertake that inquiry, you have to know

11   whether you're dealing with, to use a quote from Your Honor in

12   the *Waymo* litigation, a concept that is essentially optics 101

13   or something that may even be unknown but readily ascertainable

14   by engineers in the field.  That inherently requires a level of

15   precision to understand what is the secret we're talking about.

16        So I can hand up the indictment.  This is not what I

17   expected we would be talking about, but I'd hand the indictment

18   to the Court.

19        What the Government has done is to tell us to identify

20   particular files.  Now, some of those files are design files or

21   schematics, some of which the Court may even have seen before,

22   many of which have not been seen.  Other documents are lengthy

23   PowerPoints or documents.

24        The indictment does not tell us what information contained

25   within any of those documents is the alleged secret.  It says,

1  here's a document.  And many of the documents could contain any

2  number of characteristics or features that are alleged to be

3  secret.  But many of the -- for instance, the design files, as

4  we've discussed with the Government, a particular design file

5  could have a feature relating to the spacing of diodes or to

6  the selection of components on a board or to the manner of

7  fabrication.

8      For us to defend this case, we need to understand which --

9  which is the secret even to know which expert that we want to

10  ask questions of.  Is it an electronics expert? an optics? a

11  fabrication?

12          THE COURT:  This is a public document, isn't it?

13          MS. WAWRZYNIAK:  It is, Your Honor.  And so --

14          THE COURT:  Wait a second.

15      Let's take Count One.  "File name:

16  project/laser/gbr/gbrlasermodule."  And then it goes on in that

17  vein.  "Description: transmit block configuration."  And SVN

18  means what?

19          MS. WAWRZYNIAK:  That's the source where the document

20  came from, Your Honor.  That's a subversion server that Google

21  used.

22          THE COURT:  A subservient?

23          MS. WAWRZYNIAK:  Subversion.

24          THE COURT:  Subversion, okay.

25          MS. WAWRZYNIAK:  Yes.

1          **THE COURT:**  Okay.  All right.  So I remember,

2     somewhat, that these files could be quite large.  It looks like

3     you've got a file here.

4          **MS. WAWRZYNIAK:**  Yes, Your Honor.

5          **THE COURT:**  So if we were to print out that first

6     Count One, how many pages would that be?

7          **MS. WAWRZYNIAK:**  I don't know offhand, Your Honor.

8          I will tell you that the very first production we made to

9     defense counsel was these 33 files.  Those were the documents

10    that were produced on September 24th, so he has the actual

11    files themselves.  The first 26 are computer assisted design

12    files or CAD files.

13         So Your Honor is right, they're intended to be viewed in a

14    computer program so when it's reduced to a flat schematic for

15    printing it often is several pages in a pdf that show

16    different -- you know, the layouts of circuit boards, et

17    cetera.

18         **THE COURT:**  Sure.  But do you know on Count One how

19    many pages it is?

20         **MR. EHRLICH:**  I don't know with precision, but I'm

21    estimating about 20 pages.

22         There were about 400 pages that we were provided by the

23    Government that covered the field of the actual trade secret

24    documents.  But, as the Court knows, our point is not we don't

25    know the document.  We don't know the information that meets --

1    that is alleged to meet the test of trade secret.

2         And there were a lot of misfires that we all remember in

3    the *Waymo* litigation where things that were alleged to be

4    secret turned out not to be secret at all.

5         And we're just at the beginning, where we're trying to

6    understand what is the -- what are the contours of the

7    information that is central to any allegation in this case,

8    including attempt, and then we can begin the process of

9    preparing our defense, in part, by understanding whether that

10   quantum of information was indeed kept secret, is it readily

11   ascertainable, and is that quantum of information something

12   that provides independent economic value from its secrecy?

13        We can't get off the starting line unless we have clarity

14   to search through 20 pages of schematics --

15        **THE COURT:**  Now you're exaggerating.  You can get off

16   the starting line.

17        **MR. EHRLICH:**  I withdraw that.

18        **THE COURT:**  File one and file two and what's in there,

19   and your client is an engineer, he can -- he can help explain

20   all of that to you.

21        **MS. WAWRZYNIAK:**  And, Your Honor --

22        **THE COURT:**  Wait a second.  I want to come back to the

23   Government on this for a second.

24        I do think, though, Mr. Ehrlich has something of a point,

25   which is this.  This scenario is very likely, if we went to

1    trial on the present record, very likely to occur.  Let's say

2    we just have Count One, and the other side, defense, is going

3    to put on some expert that goes through 19 of the 20 pages --

4    all 20 pages and says, look, we could find diagrams like this

5    in any other competitor company, and anybody who practices in

6    this area is going to have diagrams just like this or very

7    similar.  And he will say, "In my opinion, there's no trade

8    secret here."

9         So then you will be incentivized, maybe at the last

10   minute, if I guess right, to say, well, what is the trade

11   secret?  And so then your expert will come in and say, well,

12   it's this combination on page 3 and 7 and 14, and that

13   particular spacing had never been done, and there's a magic to

14   that spacing, and that's the trade secret even though the

15   document doesn't say that.

16        And then the other side learns for the first time, on the

17   eve of trial or maybe during the trial, that it's page 3, 7 and

18   14 and that magic combination that is the alleged trade secret.

19        So is that -- I need the help of the lawyers here.  In a

20   criminal case what does the law say is the right way for the

21   defense to learn what it's got to defend against in terms of

22   what is the trade secret?

23        So I'm not making any ruling here, but I am pointing out a

24   practical problem that we've got to solve to be able to try

25   this case on a fair basis.  So what do you think?  What does

1    the law say on that point?

2         MS. WAWRZYNIAK:  Well, let me start with a practical

3    point --

4         THE COURT:  Yeah.

5         MS. WAWRZYNIAK:  -- Your Honor, which is that we

6    produced to defense counsel a bunch of FBI reports, including,

7    importantly, what are known as the 302s, the reports of

8    interviews --

9         THE COURT:  Sure.

10        MS. WAWRZYNIAK:  -- with Waymo witnesses who are

11   explaining what about these specific files, what technology is

12   valuable and is the trade secret.

13        So there's 302s from engineering witnesses at Waymo.

14   There is also a report that discusses the 33 documents and the

15   specific technology at issue in those 33 documents.

16        Those documents have been turned over to defense counsel.

17   I sent them a letter earlier this week that called out the

18   specific Bates ranges so they could find that material and

19   start there.

20        We are not --

21        THE COURT:  You say you've already given a report on

22   all 33 counts where you identify the specific trade secret?

23        MS. WAWRZYNIAK:  Yes, Your Honor.

24        THE COURT:  You have?  Okay.  Could I see that?

25        MS. WAWRZYNIAK:  I don't have it with me, Your Honor,

but it's a report that memorializes discussions that we have had talking about the specific technology at issue.

And, Your Honor, I'm just speaking in general terms because I am aware that the courtroom is open.  But, as Your Honor has just mentioned a moment ago, sort of the configuration of the diodes or the particular technical problem that was fixed in the schematic, the defense counsel, respectfully, already has that information.

**THE COURT:**  Well, that is important to know, that you -- but do you have the document she's talking about?

**MR. EHRLICH:**  I'm holding the documents in my hand.

**THE COURT:**  Hold it up to me in a minute.

**MR. EHRLICH:**  Your Honor --

**THE COURT:**  What?

**MR. EHRLICH:**  -- I'm happy to hand it up to Your Honor.  Can I step back for a second?

I have been in the Court and heard the Court say sometimes that it would be better served by having briefing and an organized discussion on the point.

This is a fundamental -- the required specificity and the clarity with which a defendant needs to be told what is the trade secret they are being charged with, I think there is case law.  We have full cases.  I think it's likely something we may need to resolve in a Bill of Particulars motion.

I think in fairness to the Government, they have

1    identified three 302s.  I'm happy to hand them to the Court.

2            **THE COURT:**  No.  Where's the omnibus document that had

3    all 33?

4            **MR. EHRLICH:**  This is the omnibus document.  And I

5    believe the Court will be surprised to see the lack of clarity

6    it provides.

7            **THE COURT:**  I would like to see where you're talking

8    about.

9        When it refers to tabs 1 through 6, tabs 7, 8, what would

10   those be referring to?

11           **MS. WAWRZYNIAK:**  Those would be the documents

12   corresponding to the counts, Your Honor.  So tabs 1 through 6

13   would be the documents 1 through 6.

14           **THE COURT:**  Okay.  So tab 7 refers to Count Seven?

15           **MS. WAWRZYNIAK:**  Correct, Your Honor.

16           **THE COURT:**  When was the alleged theft?  What year?

17           **MS. WAWRZYNIAK:**  December 2015 into January of 2016,

18   Your Honor.

19           **THE COURT:**  All right.  So there's a reference to a

20   patent '154, published in April 2016.  So prior to its

21   publication was the application known, public, or was that

22   still under seal at the PTO?

23           **MS. WAWRZYNIAK:**  We believe it was still under seal,

24   Your Honor.  We -- there's an unpublished case that has found

25   that subsequent patenting of an idea is not a disclosure that

1    would invalidate the trade secret at the time it was stolen.

2         **THE COURT:**  No, that would clearly be right unless the

3    application was a public document.  Then my guess is -- well,

4    if it wasn't a public document, then it could still qualify as

5    a trade secret.

6         Well, I do think the -- this is a stab in the right

7    direction, this document.  I'm going to hand it back.

8         It may not have every -- I'm going to say it probably

9    doesn't have everything that you need, but at least it has --

10   it goes part of the way toward giving you what you need to know

11   to defend against it.

12        But your point about a Bill of Particulars may be a good

13   one.  See, if we come in here and talk delay city, which is

14   where you started, then you kick the can down the road, it will

15   be next year before we do a Bill of Particulars.

16        You ought to be making your Bill of Particulars today.

17        **MR. EHRLICH:**  Your Honor --

18        **THE COURT:**  We ought to be moving this case instead

19   of -- all right.  I'm going to get upset.  I'm going to stop on

20   that.

21        I want to come back to I want to make sure that we do what

22   the law requires in specifying the trade secrets.

23        I will say to the Government, are any of you engineers?

24        **MS. WAWRZYNIAK:**  No, Your Honor.

25        **MR. DAWSON:**  No, Your Honor.

1        **MS. ROONEY:**  No, Your Honor.

2        **THE COURT:**  Are your agents, FBI agents, engineers?

3        **MS. ROONEY:**  Yes, Your Honor.

4        **THE COURT:**  Well, that's good, because I learned in

5   the Waymo case that at least half of what the people claimed to

6   be trade secrets doesn't really qualify.  The other half may,

7   yes.

8        So you've got 33, maybe half of them qualify.  You only

9   need one.  But just because some engineer at Waymo says it's a

10  trade secret, that's only a small step in the right direction.

11       And all of these big companies lock up their stuff in

12  computers.  That doesn't mean much because they lock up

13  everything, including stuff that's clearly -- you know,

14  published literature gets locked up in the computer.

15       So how can that be -- so you need to be aware that a good

16  expert could probably go through your list of 33 and knock out

17  a fair number of them as not trade secrets.

18       Now, is that for me to decide?  Is that for the jury to

19  decide?  My guess is it's for the jury to decide, but I'm just

20  guessing.  But that's the most fundamental point I'm raising

21  right now is a procedural one.

22       When does Mr. Ehrlich get to know that it's the special

23  combination on page 7, 11 and 14, and the spacing of the diodes

24  as shown on that page, and the direction in which they're

25  aimed, that that is the trade secret that you're alleging?

1          There has to be a point where before trial they know the

2     specifics.  Is that something that comes up on Bill of

3     Particulars?  Is that something that comes up at the time of

4     the experts?

5          If we postpone it to the time of the experts, I know what

6     will happen.  There will be a shifting-sands problem, and then

7     the other side will say, well, we can't go to trial; the

8     Government has completely changed its theory, and now we've got

9     to do follow up, and we can't have a trial in two weeks, we've

10    got to have a trial in six months.

11         So I need the help of the lawyers to solve this problem

12    now rather than kick the can down the road.  So tell me how

13    we're going to -- what does the law require in terms -- what is

14    the minimum the Government has got to do under the law to be

15    fair to the defendant, at this point, on specifying the trade

16    secrets?

17         **MS. WAWRZYNIAK:**  I agree with Mr. Ehrlich that this is

18    most often litigated in trade secret cases through a motion for

19    Bill of Particulars.  We've started to look at the case law

20    around that.  I'm not in a position today to conclusively opine

21    on that.

22         I will say that what Your Honor has said a moment ago is

23    correct, that ultimately the determination of whether something

24    constitutes a trade secret or not is a question of fact for the

25    jury in a criminal case.

1          There is no summary judgment procedure in the criminal

2    context, unlike in the civil context.  So we are left with

3    litigating, potentially, a motion for a Bill of Particulars and

4    then putting these questions to the jury.

5          THE COURT:  Well, what's the role -- is there any like

6    experts?

7          MS. WAWRZYNIAK:  Yes, absolutely, Your Honor.

8          THE COURT:  Aren't you going to have experts?

9          MS. WAWRZYNIAK:  We will have experts.

10          THE COURT:  Does *Daubert* apply to experts?

11          MS. WAWRZYNIAK:  Yes, Your Honor.

12          THE COURT:  Well, then the judge could say *Daubert*

13    applies; that trade secret is out because that is an

14    unacceptable methodology.  That would be for the judge, not for

15    the jury, possibly.

16          I'm not saying I'm going to throw it out, but we need --

17    this is the most important point in the whole case.  I know

18    enough of the facts of the case.  Certainly there's nothing

19    more important than whether or not 1 through 33 qualify as

20    trade secrets, and we need to have an organized way to get to

21    the bottom of it.

22          MR. EHRLICH:  Your Honor --

23          THE COURT:  Yes.

24          MR. EHRLICH:  -- we will meet and confer and discuss

25    the case.  And I think we should come back with a joint

1  proposal on that point.

2      I would urge all of us to go back to your published

3  rulings in the Waymo litigation where you demanded an exacting

4  level of precision in a civil case.

5          **THE COURT:**  Yeah, but that was a civil case.

6          **MR. EHRLICH:**  Now we're in a criminal case.

7          **THE COURT:**  We have different rules.

8          **MR. EHRLICH:**  But a criminal case is not a trial by

9  ambush.  Perhaps sometimes in civil cases things can shift and

10  move.  But in a criminal case you have to know what -- you have

11  to be apprized of the charges against you, and you have to know

12  what you are defending against.

13      And I wholeheartedly agree, the fundamental case here is

14  what is the either item of information or combination of

15  information that meets all the various trade secret tests?

16      That allows us to ask questions such as was that -- now

17  that we know what it is, was that protected, a secret?  Is this

18  readily ascertainable?  Is this independently economically

19  valuable from its secrecy?

20      It's very hard, and in the defense case Mr. Levandowski

21  does not have the resources of Google and Uber to hire experts

22  and ask, you know, scores of questions that might be related to

23  the trade secret.  We have to know what it is.

24      It seems that after investigating a case that was very,

25  very heavily litigated, deeply litigated, and investigating

1    that for two and a half years, the Government would be able to

2    say quite clearly, crisply, these are the contours of each

3    secret.

4            **THE COURT:**  The document you showed me, if it doesn't

5    go all the way it goes part of the way.  And we are early in

6    the case, so I think that's better than what a lot of

7    prosecutors would have given you.  So --

8            **MR. EHRLICH:**  Your Honor --

9            **THE COURT:**  -- maybe you do deserve more, but they are

10   headed in the right direction.

11           **MR. EHRLICH:**  I want to suggest another way to think

12   about it, but from the comment about "delay city."

13       What we are talking about now is basic Rule 16 discovery,

14   which are the materials in the possession of the Government --

15   we don't know how long -- that they believe are necessary for

16   effective preparation of our defense.

17       It used to be, I think, and I think it still is in many

18   cases, when the Government gets to decide when they indict they

19   at least know they have an obligation to provide the Rule 16

20   materials they have, not what they don't yet have but what they

21   have, and they have it ready to go.

22       We are now talking about three months from the date they

23   chose to indict for them to give us the rule -- the basic

24   Rule 16 materials that they think are necessary to the

25   preparation of our defense.

1          I get it.  We can talk, your eyes glaze over when you hear

2     this number of gigabytes or this number of pages --

3          THE COURT:  Rule 16 doesn't say anything about trade

4     secret specification.  So maybe they've already given you more

5     than Rule 16 requires.

6          MR. EHRLICH:  I think we'll just -- we'll raise that

7     in the Bill of Particulars motion.

8          But I was more talking about the trial schedule.  I think

9     the specificity is absolutely a critical element for us to

10    resolve.  But, also, just in terms of us trying to digest the

11    volume of material that may or may not be pertinent, we don't

12    know yet, but we -- it apparently is going to take several more

13    months for them just to locate and copy it to provide to us.

14    That's not even talking about reading it and evaluating it.

15         THE COURT:  What are you talking about?

16         MR. EHRLICH:  The Government is saying that they will

17    complete their Rule 16 discovery by Thanksgiving.  That's

18    material that was ready in hand at the time they chose to

19    indict.  And that's time that is taken off of our clock if the

20    Court has already fixed --

21         THE COURT:  You, yourself, have been complaining you

22    can't read everything at once.  So they've given you plenty to

23    be reading in the meantime.

24         MR. EHRLICH:  That's fair.

25         MS. WAWRZYNIAK:  Indeed, Your Honor.

1        And while the representation issue has been open, that

2    also affected the timeline to a certain extent because

3    initially I don't believe that they were going to go through

4    all the discovery until that became more final.  It sounds like

5    it is now at a point where it is.

6        But I dispute this contention that we haven't been timely

7    in our productions.  We have produced the vast majority, and

8    there remains in our possession only about 45 gigabytes more to

9    produce.  And we've estimated that we can get that done by

10   Thanksgiving.

11       Once the protective order was entered, we had to do some

12   due diligence to make sure that documents were labeled

13   appropriately when they were going out.

14           **THE COURT:**  I have a plan.  It's only a temporary

15   solution.  We're going to come back in two weeks.

16       What date would that be?

17           **THE CLERK:**  The calendar is closed.

18           **THE COURT:**  Can I do it earlier in the day?

19           **THE CLERK:**  You have a calendar earlier already.

20           **THE COURT:**  How about on Wednesday, can I do it on

21   Wednesday?

22           **THE CLERK:**  Yes, November 13th.

23           **THE COURT:**  What time?

24           **THE CLERK:**  At 1:00 o'clock.

25           **THE COURT:**  Does that work?

1          Here's what I want us to do.  First thing is, Mr. Ehrlich

2     and Mr. Ramsey should file their motion for a Bill of

3     Particulars at least a week before that.

4          **MR. EHRLICH:**  Excuse me.

5          (Defense counsel confer off the record.)

6          **MR. EHRLICH:**  Your Honor, the bill of -- the most

7     common response defense gets to a motion for a Bill of

8     Particulars is, oh, that's in the discovery, and we're still

9     getting you discovery, and there will be more clarity.

10         So if the Government is in a position to say that the

11    discovery we've already received provides the necessary

12    clarity, then I think we would be in a position to make a

13    motion and explain perhaps why it does not.

14         So we were waiting to do a Bill of Particulars until we've

15    gotten the discovery --

16         **THE COURT:**  You've been telling me there's so many

17    gigabytes you can't get through it all; it's a needle in the

18    haystack for you to go through there.

19         I think you ought to bring your motion for a Bill of

20    Particulars and have that on file within two weeks so it will

21    be on file when we show up the next time.

22         **MR. EHRLICH:**  Can we ask the Government to identify

23    each of the items in their admittedly voluminous discovery that

24    provides the clarity they believe they need to provide on the

25    charges?

1          THE COURT:  What do you say to that?

2       (Government counsel confer off the record.)

3          MS. WAWRZYNIAK:  Yes, Your Honor, we can make our best

4    effort to do that.

5          THE COURT:  All right.  Great.  Thank you.

6          MR. EHRLICH:  By when?

7          THE COURT:  How about -- when can you do that?

8          MS. WAWRZYNIAK:  How about by Monday, Your Honor, the

9    4th?

10          THE COURT:  Thank you.

11       All right.  So also what I want to do is pick one of the

12    33, just one.  We'll let the Government pick one of these.  And

13    then we might have to do this in secrecy, nonpublic, so as not

14    to reveal any trade secret.  But I would like for us to go

15    through it in some detail, and you show me how -- in some

16    detail.

17       So if Count One has 20 pages and it really is pages 7, 11

18    and 14, then you highlight for me.  So you say, "This is where

19    the trade secret is," and so I can get a feel for what we're up

20    against in terms of how easy or hard it is to specify the trade

21    secret.

22       We just need to do it on one.  I'm not --

23          MR. EHRLICH:  Your Honor, can I ask that we do it on

24    two; that the defense selects one and the Government selects

25    one just so the Court has a little bit more of a feel for what

1   is representative of the 33?

2          **THE COURT:**  All right.  You can do one.  You can pick

3   one and the Government can.  Each of you get to pick one and

4   show me what the problem is.

5          **MR. EHRLICH:**  Okay.

6          **THE COURT:**  Now, if you meet and confer and come up

7   with a solution, maybe that would obviate the need for all of

8   this, and you just report back in two weeks that you've done

9   that.

10         But I have a feeling this is the kind of thing that the

11  lawyers kick down the road, and then we get close to trial and

12  for different reasons you both don't want to go to trial and

13  so, meanwhile, my calendar is goofed up.

14         I would like to keep this case on schedule.  If I go with

15  your schedule, the law clerk that's going to know everything

16  about the case will be gone by then.  That's only a small

17  factor, but I don't want to lose that date unless I have -- so

18  I'm not going to rule on which of these schedules is going to

19  apply yet.

20         We're going to have this next hearing and try to make some

21  progress to see -- see what the discovery problems are, the

22  specification problems.

23         **MR. EHRLICH:**  Your Honor, are we supposed to file the

24  pleading --

25         **THE COURT:**  No.

1              **MR. EHRLICH:**  -- on Wednesday, November 13th?

2              **THE COURT:**  The only pleading that's got to be filed

3      is the Bill of Particulars.  But the things you want to show me

4      you can just bring to court, and we'll examine it in camera --

5      or, I'm sorry, in a nonpublic proceeding in order to preserve

6      the secrecy of the data.

7          Now, Mr. Levandowski will have to be here, of course.

8      But, according to you anyway, he's seen all this anyhow so it

9      wouldn't matter.

10             **MR. EHRLICH:**  Just to be clear, we file the motion for

11     Bill of Particulars on November 13th?

12             **THE COURT:**  No, no, no.  You file it about a week

13     earlier so I can see it before -- so the Bill of Particulars

14     should be filed.  However -- the motion for Bill of Particulars

15     should be filed, but the count that you want me to examine and

16     the backup documents, you don't have to file that in advance.

17     Nor does the Government.

18         You just bring it to court and have copies so we can all

19     sort it out, and then I'm going to give you the copies back.

20     We'll have a court reporter's record of it, but I'm not going

21     to make these top secret documents part of the Court record

22     yet.

23             **MR. EHRLICH:**  But the Bill of Particulars then would

24     be due on the 6th?

25             **THE COURT:**  Yeah.

1          **MR. EHRLICH:**  Okay.

2          **THE COURT:**  Can't you do that?

3          **MR. EHRLICH:**  I don't --

4          **THE COURT:**  Yeah, you can do that.

5          **MR. EHRLICH:**  We will provide the law and our thoughts

6    as they exist at the time.

7          **THE COURT:**  Oh, I do want you both to file briefs,

8    though, on how do -- what is the law on specifying the specific

9    trade secret in a criminal case and when does that occur.  Does

10   it occur by Bill of Particulars?  Does it occur in the experts?

11   Does it occur some other way?  Or is it just a free-for-all in

12   front of the jury?

13         **MR. EHRLICH:**  Your Honor, can I ask that we just get a

14   week more of time?  This is a lot.

15         **THE COURT:**  Why?

16         **MR. EHRLICH:**  Because these are -- these are very

17   complicated issues.  They take real careful thought and

18   briefing.  These are the foundational issues in the case.

19         **THE COURT:**  You talked me into a second one, now

20   you're using that -- I'm going to go back to -- no.  The

21   Government gets one and you get zero because I only need one

22   example.

23       Now you're trying to shoehorn this into delay city.  So

24   you're not going to talk me into that.  If you want to do it,

25   you've got to do it -- we're going to have a hearing in two

1    weeks.  I've got to keep this case on track.  Three weeks is

2    delay city for something this simple.

3              **MR. EHRLICH:**  All right.  If faced with that choice,

4    we'll take our second back and we'll get you the best briefing

5    we can on that schedule.

6              **THE COURT:**  Fine.  Does taking it back mean you're

7    going to be prepared to explain your second one to me?

8              **MR. EHRLICH:**  Yeah, our concerns and questions about

9    the second one.

10             **THE COURT:**  All right.  Fine.

11        Anything else?

12             **MS. WAWRZYNIAK:**  When do you want us to file -- or

13   when can the defense identify for us the second one so we can

14   prepare our presentation for the 13th?

15             **MR. EHRLICH:**  My understanding is that on the 4th the

16   Government will be providing the specificity or the documents

17   within the discovery we've already been provided that provide

18   the specificity as to all 33 trade secrets.

19             **THE COURT:**  That's what you said.

20             **MR. EHRLICH:**  So we need to have that and have at

21   least a couple of days to consider it.  I believe that we could

22   by the 8th, which is the Friday --

23             **THE COURT:**  All right.

24             **MR. EHRLICH:**  -- identify our document that we think

25   should be discussed.

1          **THE COURT:**  They will do it simultaneously for the one

2     they want to explain.

3          So on the 8th, each of you explain, okay, you say, for

4     example, "We'll do number 1," and they say "We'll do number 7."

5     And you don't have to further bring -- do anything other than

6     bring to court the documents you want me to see how easy or

7     hard it's going to be.

8          All right.  But I do want a brief about three or four days

9     ahead of time on the subject of procedurally how -- what is the

10    law on how the specificity issue gets resolved.

11         And I don't need -- let's say Monday at noon before the

12    Wednesday hearing.  That would be enough time for me to read

13    it.

14         **MR. EHRLICH:**  Simultaneous briefing?

15         **THE COURT:**  Yeah, Monday at noon.  I'm thinking seven

16    or eight pages would be plenty.  But you have as many pages as

17    you want.

18         Have I done as much damage as possible?

19         (Laughter)

20         **THE COURT:**  All right.  We'll see you then.

21         Wait.  Have we excluded time yet in this case?

22         **MS. WAWRZYNIAK:**  No, I believe it was just excluded

23    through today, Your Honor.

24         **THE COURT:**  All right.  For all the previous reasons,

25    I will exclude it up to the date of the next hearing.

1          **MS. WAWRZYNIAK:**  So November 13th, at 1:00 p.m., Your
2    Honor?

3          **THE COURT:**  Correct.

4          **MS. WAWRZYNIAK:**  All right.

5          **THE COURT:**  Please do a stipulated order.

6          **MR. EHRLICH:**  Your Honor, just in a parting shot --

7          **THE COURT:**  Yes.

8          **MR. EHRLICH:**  -- if I may.

9          **THE COURT:**  Yes.

10         **MR. EHRLICH:**  I know we haven't -- we're going to
11    discuss further the trial schedule.

12         The schedule you set is worlds faster -- or that you
13    proposed tentatively is worlds faster than any trade secret
14    case we're aware of going to trial in this district in the last
15    nine years, including a case pending before this court in the
16    *Lam* case, which has about the same number of trade secrets but
17    has apparently 8,000 pages of discovery.

18         So we are asking for just an additional five months based
19    on some guesses about what we -- we're going to be provided,
20    the same amount as in the *Lam* case.

21         And so I just -- we proposed five additional months.
22    We're not looking to delay endlessly this case.

23         **THE COURT:**  I'm not ruling on that yet.

24         **MR. EHRLICH:**  Okay.

25         **THE COURT:**  That point we will take up.  But I bet if

```
 1   we look outside this district we could find plenty of cases,
 2   including Los Angeles, where my schedule would look like a
 3   leisurely walk in the park.
 4        There's a culture in our district that goes for delay.
 5   And other districts are much faster.
 6             MR. EHRLICH:  We'll move it as fast as we can.
 7             THE COURT:  They believe in the Speedy Trial Act in
 8   other districts, including Los Angeles.
 9             MR. EHRLICH:  Thank you, Your Honor.
10             THE COURT:  I am not saying no yet.
11        All right.  Thank you, Counsel.
12             MR. EHRLICH:  Thank you.
13             MS. ROONEY:  Thank you, Your Honor.
14        (At 10:05 a.m. the proceedings were adjourned.)
15                        - - - - -
16
17
18
19
20
21
22
23
24
25
```

1

2

3          **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6   DATE: Wednesday, October 30, 2019

7

8

9                    *Katherine Sullivan*

10  _____

11          Katherine Powell Sullivan, CSR #5812, RMR, CRR
                      U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25