RAMSEY & EHRLICH LLP
MILES EHRLICH - #237954
miles@ramsey-ehrlich.com
ISMAIL RAMSEY - #189820
izzy@ramsey-ehrlich.com
AMY CRAIG - #269339
amy@ramsey-ehrlich.com
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Defendant
ANTHONY LEVANDOWSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| United States, | Case No.: CR 19-00377-WHA |
| Plaintiff, | |
| v. | **DEFENDANT ANTHONY LEVANDOWSKI'S MOTION FOR BILL OF PARTICULARS** |
| Anthony Levandowski, | |
| Defendant | Date:          TBD by the Court<br>Courtroom:   Courtroom 12 - 19th Floor |
| | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

## I.  INTRODUCTION

Defendant Anthony Levandowski hereby requests a bill of particulars to clarify the scope and specific contours of the information that has been charged as the allegedly stolen trade secrets in this case.  At the Court's urging during last week's hearing, the government has provided some additional clarity as to the nature and scope of the trade secrets it seeks to prove at trial.  But, with respect to the majority of counts, the government's disclosures still fail to provide the detail necessary to identify the precise trade secrets that Mr. Levandowski stands charged with stealing.  Even more problematic than the lack of particularity provided, the

government has asserted that it "reserves the right" to switch theories as to how to "frame" the trade secrets allegedly stolen, depending on how its case preparation progresses or how the evidence may develop at trial. A fixed and binding bill of particulars is thus necessary now to provide sufficient notice to Mr. Levandowski for him to be able to adequately prepare his defense to the charges and to avoid prejudicial surprises at trial from the government changing course and pressing fundamentally different trade secrets than those described by the government today.

The Indictment charges Levandowski with 33 counts of actual and attempted trade-secret theft in violation of 18 U.S.C. § 1832(a). For each count, the government must prove, as an essential element of the offense, that the alleged trade secret at issue was valid and enforceable at the time of the alleged misappropriation. *See* 18 U.S.C §§ 1832 & 1839; *see also* Ninth Circuit Model Criminal Jury Instructions 8.141B & 8.141C. To do so, the government, as a threshold matter, must identify what the alleged trade secret is that he has been charged with stealing—and **not leave him to guess** at what specific information comprises the alleged trade secret. *See, e.g.*, *United States v. Liu*, Case No. 13-cr-226 (W.D.N.Y. Oct. 20, 2016), Dkt. 180 at 4-6 (ordering the government to provide a bill of particulars "specifically identifying each trade secret" because "the government may not force defendant or this court to guess at which trade secrets it will seek to prove at trial") (a copy of *Liu* decision is attached to Craig Decl. as Exhibit E.)[1]

The face of the Indictment provides only a file name for, and brief description of, the document alleged to contain the claimed trade secrets for each count. To address this imprecision in the Indictment, in the hearing last Tuesday, the Court urged the government to provide more specificity. Two days ago, at the close of business on November 4, the government pointed the defense to thousands of pages of pleadings and deposition transcripts from the civil litigation that it asserts will provide more detail. More helpfully, the government

---

[1] For the "attempt" charge, the government must prove that Levandowski intended to steal a particular trade secret and thus must still identify the information that it says Levandowski believed comprised the trade secret. Moreover, the government is proceeding not only on a theory of attempted trade-secret theft but also on a theory of actual trade-secret theft. The latter theory unquestionably requires proof of an actual trade secret.

2

also provided a chart that matches each of the 33 counts in the Indictment to some combination of 23 separate trade-secret descriptions that Waymo filed in the related civil case.  The government's chart cross-referenced its charged counts to Waymo's "List of Asserted Trade Secrets Pursuant to Code Civ. Proc. Section 2019.210." *Waymo v. Uber*, C 17-00939 WHA, Dkt. 25-7 (filed under seal on 3/10/2017).  The government's chart is appended to its November 4, 2019 letter.  Exhibit A to Declaration of Amy Craig ("Craig Decl.") (filed herewith) at 5-6, *see also* Waymo's 2019.210 List (attached as Exhibit B to Craig Decl.).  This chart goes a long way towards identifying for Levandowski the information he needs to prepare his defense—but, with the exception of a few counts, it still falls well short of the specificity needed to enable him to assess whether the information alleged meets the trade-secret trilogy of tests—secrecy, non-ascertainability, and independent economic value deriving from its secrecy.

For each of the 23 cross-referenced trade secrets, Waymo, in its civil filing, described what information it believed comprises the trade secret.  Some of these descriptions, when coupled with the file names listed in the corresponding count of the Indictment, do clarify the contours of the alleged trade secret, enabling Levandowski to prepare his defense as to these particular counts.  But many of Waymo's descriptions from the civil filing are so expansive and vague that they provide no clarity as to what the alleged trade secret actually is.

Even more concerning than this, what the government has now given with one hand, it has snatched back with the other.  In its letter attaching the chart, the government warns that it may later decide to identify different trade secrets to prove up its case.  In other words, having provided the defense with a glimpse of the outlines of the trade secrets it charged, the government claims that, at any time, it can simply shake its Etch A Sketch and choose a new way to "articulate" the trade secret.  "If the Court orders a Bill of Particulars, [the government] reserve[s] the right to articulate **additional, different, or modified trade secrets** found within the particular files identified in the Indictment." *See* Exh. A to Craig Decl. at 2 (emphasis added). So, after two and a half years of investigation, with the extraordinarily valuable assistance from Google counsel and Waymo engineers—in a case where the definition of a trade secret is

perhaps the most fundamental element of all—the government refuses to provide a fixed definition of the trade secrets it has charged.  It offers just its current plans, subject to change.

Testing whether some idea, or collection of information, was (1) reasonably guarded as secret by its owner, (2) not present in prior art or readily ascertainable by others in the field, and (3) independently valuable from its secrecy,[2] can be a painstaking and meticulously detailed inquiry.  At minimum, it requires a precise understanding of the contours of the information being tested.  Allowing a state of uncertainty as to what information comprises the alleged trade secrets renders Levandowski unable to effectively prepare his defense and likely will cause delay in the future.  As this Court has noted, a "shifting sands" problem inevitably will occur with this type of imprecision.  Dkt. 41 (Transcript of Proceedings held on 10/29/19) at 18:6-10 ("There will be a shifting-sands problem, and then the other side will say, well, we can't go to trial; the Government has completely changed its theory, and now we've got to do follow up, and we can't have a trial in two weeks, we've got to have a trial in six months.").  Down the line, as the case gets refined for trial, if the government comes to recognize weaknesses in the trade secret definitions it initially adopted, it will just change up its theory and opt for new and different definitions for the trade secrets.

But, if this occurs, the defense will need more time to evaluate and respond to the latest description of the government's "additional, different, or modified trade secrets."  It will change the questions that the defense will need to ask of experts and lay witnesses, and it may well call for additional discovery of newly-responsive documents.  A fixed, definitive, and binding statement upfront, specifying with particularly what information constitutes each of the trade secrets alleged in the Indictment, is necessary to avoid this problem of "shifting sands," and will enable this Court to manage the case efficiently going forward.

---

[2] The statute defines a trade secret as information "the owner thereof has taken reasonable measures to keep [] secret" and which "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839.

Such a statement would be consistent with the requirement in civil trade-secret cases that plaintiffs provide such specificity.[3]  Curiously, the government posits that the protections afforded a civil trade-secret defendant do not apply here, in a criminal case. *See* Exh. A to Craig Decl. at 1.  But other courts have flatly rejected that argument, holding "'[t]he procedural safeguards that are required when an individual's liberty is at stake must at least equal those required before he may be deprived of his property.'" *United States v. Liu*, *supra*, Dkt. 180 at 5 (criminal trade secret case quoting *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985)).

For these reasons, Levandowski moves this Court, under Fed. R. Crim. P. 7(f), to order the government to provide a bill of particulars describing **conclusively and with particularity** the pieces of information (or combination thereof) that comprise the trade secrets for each count in the Indictment.

## II.  BACKGROUND

### The Current Description of the 33 Trade Secrets

For each of the 33 counts, the Indictment lists a directory and file name plus a brief, general description of the technology, such as "Transmit Block Configuration," "Flip Flop Circuit," and "Presentation re LiDAR Engineering Issue."  Each referenced file contains between 1 and 61 pages.

The government attempted to describe more specifically which pieces of information—or combination thereof—comprise the alleged trade secrets by pointing Levandowski to three other documents—two FBI 302s (Bates FBI_PROD_000925-32 and FBI_PROD_001025-28) and a separate FBI Electronic Communication Form 1057 (FBI_PROD_001176-89).

---

[3] *See, e.g., JobScience, Inc. v. CVPartners, Inc.*, No. C 12-04519-WHA, 2014 WL 1724763, at *3 (N.D. Cal. May 1, 2014) (this Court struck plaintiff's trade secret claim after finding that plaintiff's disclosure "ma[de] it virtually impossible to distinguish the alleged trade secrets from knowledge in the field," such that "Defendants cannot reasonably prepare its defenses."); *VasoNova Inc. v. Grunwald*, No. C 12-02422 WHA, 2012 WL 4119970, at *2 (N.D. Cal. Sept. 18, 2012) (requiring "enough detail so that the defendant is able to learn the boundaries of the alleged trade secret in order to investigate defenses"); *see also Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 370–72 (S.D.N.Y. 1974) ("At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are.")

On November 4, at the Court's direction, the government provided further clarity, producing a chart matching particular trade secrets described by Waymo in the related civil case to corresponding counts in the Indictment,  The chart references 23 trade secrets total—TS 2, TS 7, TS 20, TS 81, TS 85-TS 90, TS 94-TS 99, TS 102-TS 107, and TS 115.  But, somewhat perplexingly, the government undermined any confidence that could be placed in the chart by describing it as a "chart reveal[ing] what we see as the rough concordance."  *See* Exh. A to Craig Decl. at 2.  And, as described above, the government has indicated that this list is neither exhaustive nor conclusive.  *Id*.

### III.  LEGAL STANDARD

Under Fed. R. Crim. P. 7(f), a bill of particulars "is appropriate where a defendant requires clarification in order to prepare a defense."  *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (citing *Will v. United States*, 389 U.S. 90, 99 (1967)).  A bill of particulars serves to minimize the dangers of surprise at trial and, thereby, to enhance the fairness and efficiency of the trial process.

The modern rule expresses a preference in favor of granting motions for a bill of particulars.  As originally enacted, Rule 7(f) required a showing of good cause.  That requirement was removed in order "to encourage a more liberal attitude by the courts toward bills of particulars."  *United States v. Rosa*, 891 F.3d 1063, 1066 (3d Cir. 1989) (quoting Fed. R. Crim. P. 7 advisory committee's note to 1966 amendment).

While the standard remains discretionary, the rule contemplates that a trial court should freely exercise its discretion in favor of disclosure.  *See* 1 Wright & Leipold, *Fed. Prac. & Proc. Crim.* § 130, nn. 4, 12-13 (4th ed. & 2019 Update).  Even where an indictment is facially sufficient to state an offense, a court should order a bill of particulars where it is needed to apprise the defendant with "sufficient precision" of the charges against him.  *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017).[4]  When it leads to lack of fair notice, the denial of

---

[4] Moreover, while a bill of particulars is not intended as an evidentiary discovery device, the mere fact that a bill will require the government to divulge its legal theory or some of its evidence is not a valid reason for denial.  *United States v. McQuarrie*, No. 16-20499, 2018 WL

1    a bill of particulars can constitute reversible error.  *United States v. Bortnovsky*, 820 F.2d 572,

2    575 (2d Cir. 1987).  In sum, both the rule's language and the modern case law interpreting the

3    rule suggest that, when in doubt, a district court should order the bill.

4         In determining whether to order a bill, one of the most important considerations is the

5    complexity of the case.  Where the charges are "sufficiently complex," necessitating a more

6    complex defense, a bill is warranted.  *United States v. Akroush*, No. 15-286, 2019 WL 2391808

7    at *4 (E.D. Cal. June 6, 2019).  Courts regularly grant bills when they find that "[t]he charges in

8    this case are complex."  *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill.

9    2001); *see also United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998) (stating that "we have

10   little hesitancy in saying that a bill of particulars or other adequate disclosure is appropriate" in a

11   complex case); *United States v. Chen*, No. 05-375, 2006 WL 3898177 at *3 (N.D. Cal. Nov. 9,

12   2006) (granting request for a bill in a complex drug case).

13        Charges involving complex technologies often have an especially great need for

14   particularization.  That is in part because, when complex technologies are at issue, preparation of

15   a defense will necessarily require procurement and preparation of appropriate expert witnesses.

16   Thus, for example, in *Szuhsiung*, where the defendant was charged with stealing nuclear secrets,

17   the district court ordered a bill because it agreed with the defendant "that the complexity of the

18   technologies involved require particularization."  *United States v. Szuhsiung*, No. 16-46, 2016

19   WL 7435900 at *2 (E.D. Tenn. Dec. 21, 2016).

20        Most importantly, in cases involving alleged theft of technology-based trade secrets,

21   courts have ordered bills to help defendants understand what the alleged trade secrets are.  In

22   *Liew*, for example, even where the indictment was constitutionally adequate and the discovery

23   voluminous, the court ordered a bill of particulars in order to require the government to more

24   clearly specify the nature of the alleged trade secrets.  *United States v. Liew*, No. 11-573, 2013

26   372702 at *6 (E.D. Mich. Jan. 11, 2018); *United States v. Giffen*, 379 F. Supp. 2d 337, 346

27   (S.D.N.Y. 2004).  As the Second Circuit has said, "it is of no consequence that the requested
     information would . . . require[] the disclosure of evidence or the theory of the prosecution."

28   *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998).

7

WL 2605126 at *7-8 (N.D. Cal. June 11, 2013).  The additional specification was warranted "in order to minimize surprise at trial and to assist in the expeditious and efficient resolution of this matter."  *Id*. at *8.

In *Ward*, another trade-secret case, the district court ordered the government to provide a specific statement of which portions of the discovery contained the trade secrets to avoid placing the defendant "in the position of having to guess which portions of the manual will be the subject of the Government's case-in-chief or to prepare to argue and refute evidence that each sentence or diagram contained in the manual is not generally known or readily discernible by the public" and to avoid the risk of surprise.  *United States v. Ward*, Case No. 11-02123 (E.D. Wa. June 21, 2012), Dkt. 175 at 5-6; *see also United States v. O'Rourke*, Case No. 17-495 (N.D. Ill. Sep. 5, 2018), Dkt. 43 at 3 (requiring the government to identify which portion of the documents allegedly stolen actually constituted the trade secrets alleged as it was "unclear what part of the data, combination of parts of the data, or particular trends and conclusions from the data constitute trade secrets" even after the government had already produced voluminous materials, including "all transcripts of grand jury testimony.") (Copies of *Ward* and *O'Rourke* are attached to the Craig Decl. as Exhibits F and G).

Similarly, in *United States v. Richardson*, another case involving alleged trade secret theft, the court ordered a bill to require the government to "specifically identify" the trade secrets that were "the subject of these charges."  *United States v. Richardson*, No. 90-345. 1990 WL 70335 at *2 (N.D. Ill. May 14, 1990).

Collectively, these cases stand for a common-sense proposition: A defendant charged with trade-secret theft is entitled to know well in advance of trial what the alleged trade secrets are.  Consistent with the liberal approach of Rule 7(f), a bill of particulars is an appropriate procedural vehicle for mandating the specificity necessary to identify the trade secrets.

## IV.  ARGUMENT

As this Court knows well from the related civil case, the technology at issue is highly technical, and discovery consists of hundreds of gigabytes of data.  If the government does not

have to identify definitively the trade secret information it alleges he stole, Levandowski will be
left to guess what information in a mountain of data actually comprises the trade secret.

   The government here has anchored its definition of the trade secrets to Waymo's
2019.210 filing in the civil case.  Levandowski acknowledges that certain of these descriptions—
specifically those for Trade Secrets 2, 7, and 20—are specific enough to enable Levandowski to
prepare a defense.  Unfortunately, the descriptions of the remaining 20 trade secrets (TS 81, TS
85-TS 90, TS 94-TS 99, TS 102-TS 107, and TS 115) are either too broad or too confusing to
provide clarity as to the information that is claimed to be a trade secret, leaving Levandowski to
guess.

**A.     Inadequate Descriptions**

Trade Secrets 94 through 99

   Trade Secret 96 (which the government lists along with Trade Secrets 2 and 7 for count
3) best exemplifies this point.  The definition for TS 96 is so broad and non-specific as to leave
one scratching their head in trying to determine which particular ideas, features, or
characteristics are claimed to be secret.  It reads, simply:

██████████████████████████████████████████

Exh. B to Craig Decl. at 55, ¶ 96 (third bullet).  To add to the confusion, the specific file named
in Count 3 of the indictment includes only a single layout, and does not include any "schematics"
at all.

   This problem may seem somewhat familiar to the Court. In this Court's Order Re:
Motions For Partial Summary Judgement and Motion to Strike Asserted Trade Secret Number 96
in the Waymo civil case, this Court reviewed the lack of specificity of Waymo's Trade Secret 96
description, which the U.S. Attorney's Office has nevertheless adopted without modification
here.  This Court found the description to be too broad to be useful, even in a civil case:

> This disclosure came nowhere near the required particularity.  The
> vastness of Waymo's disclosure was most unfair, for it placed
> defendants in the untenable position of having to prove that hundreds of
> subparts of the design schematic—and innumerable other strategies and

ANTHONY LEVANDOWSKI'S MOTION FOR A BILL OF PARTICULARS
CASE NO. CR 19-377-WHA

1      concepts arguably 'reflected' therein, as Waymo put it—either did not
qualify as trade secret information or were not used in defendants'
2      technology.

3 *Waymo v. Uber*, C 17-00939 WHA, Dkt. 2151 (filed under seal) at 14 (citations omitted).  This

4 Court did note that, if Waymo had been claiming that the "specific implementation" of all

5 elements of its design in their entirety—or, as the Court put it, "lock, stock, and barrel"—had

6 been misappropriated, then the description provided might have been sufficient.  *Id.* at 12, 14.

7 So, here, if that is what the government is claiming—that the trade secret is the specific

8 implementation of the entire design as reflected in the file (and not any particular features or

9 characteristics)—it should say so clearly.

10      This same problem also applies to Trade Secrets 94, 95, 97, and 98.  Each uses the same

11 broad language to describe the trade secret, only changing one letter to indicate a different

12 transmit board in the block (*e.g.,* A, B, D, and E).

13 <u>Trade Secrets 102 through 107</u>

14      Six other descriptions—those for Trade Secrets 102 through 107 (which the government

15 lists in some combination for Counts 7 through 26)—share a similar flaw to those for Trade

16 Secrets 94 through 98.  For TS 103, in its 2019.210 filing, Waymo simply asserts that the trade

17 secret is "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."  The definitions for Trade Secrets 104 through

19 107 parrot the same "each and every" phrasing, simply changing one letter in that same language

20 to reflect a different version of LiDAR (*e.g.,* PBr, TBr, YBr, and CBr).  But the documents from

21 the file names listed in the counts are either a single-page schematic or multi-page layouts.  And,

22 thus, the definition again provides no clarity as to what part or parts of these files contain the

23 information that comprises the trade secret alleged.

24      The description of Trade Secret 102 (which the government lists for Count 11) is even

25 more confusing.  Waymo writes: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓'"  But this folder does not include the file

27

28

ANTHONY LEVANDOWSKI'S MOTION FOR A BILL OF PARTICULARS
CASE NO. CR 19-377-WHA

listed in the Indictment for Count 11, which concerns a different motor—a motor for pbr, not gbr.

Trade Secrets 81 and 115

The descriptions provided for Trade Secrets 81 and 115 are also flawed—in that each refers to material that is not contained in the document referred to in the corresponding count in the Indictment.

Waymo defines Trade Secret 81, to which the government ties Count 32, as "████████████████████████████████████████████████████████████████" (emphasis added). But a review of the document identified in Count 32—named "TBR Testing Station" and described in the Indictment as a "Manual for various quality control tests and assembly steps to be performed on short-range LiDAR during manufacturing"— does not include any "flowcharts" at all.

Similarly, the description for Trade Secret 115, which the government has tied to count 13, also refers to information that is not included in the document described in the count. Waymo says the trade secret is "████████████████████████████████████████████████████████████████████████." Exh. B to Craig Decl. at 65-66, ¶ 115 (last bullet). But "accumulated know-how" is nowhere listed in the document set forth for Count 13, which is a schematic labeled "APD Circuit Design." Dkt. 1 at 6.

Trade Secrets 86 through 88

The descriptions of Trade Secrets 86 through 88 (which the government lists for counts 29 through 31) also leave Levandowski to guess at what information comprises the trade secrets at issue. Trade Secret 87 is emblematic of the problem. Waymo describes trade secret 87 as "███████████████████████████████████████████████████████████████" The document listed in Count 29 of the Indictment, PBR Intensity Calibration, contains six pages of instructions. Levandowski is left to guess whether a portion of these instructions or the specific implementation of all of them collectively represents the claimed trade secret. Regardless of which one it is, the government must say.

1       The descriptions for Trade Secrets 86 and 88 (listed for Counts 30 and 31, respectively)

2 are similarly flawed.  Waymo describes trade secret 86 as "█████████████████████

3 ████████████████████████████████████"  and trade secret 88 as

4 "██████████████████████████████████████

5 ██████████████████."  Exh. B to Craig Decl. at 49, ¶ 86 (third bullet) and 50-51, ¶ 88

6 (third bullet).  Again, the government does not state whether the trade secret is some portion of

7 the instructions or the instructions in their entirety.

8 <u>Trade Secrets 89 and 90</u>

9       The descriptions of Trade Secrets 89 and 90 (which the government lists for Counts 27

10 and 28) are both simply too broad to give notice as to the identity of the trade secret being

11 claimed.  Waymo's descriptions refer to "technical information" within a file.  Waymo describes

12 Trade Secret 89 as "███████████████████████████████

13 ██████████████████".  *Id.* at 51-52, ¶ 89 (third bullet) (emphasis added).  And it describes

14 Trade Secret 90 as "███████████████████████████████

15 █████████."  *Id.* at 52, ¶ 90 (third bullet) (emphasis added).

16       But what is the specific technical information that is the secret?  These files are 7- and

17 18-pages long, respectively.  So Levandowski is left to guess what specific information within

18 each file is deemed to comprise the trade secret.

19 <u>Trade Secret 85</u>

20       The description of Trade Secret 85 (which the government lists for Count 33) is even

21 more general, and it purports to cover an even larger document.  The document listed in Count

22 33 of the Indictment is the 60-page "Chauffeur Weekly Update for Q4 2015 document."  Waymo

23 describes the secret, rather circularly, as "the information" contained in that document, but

24 without any further specifics.  "██████████████████████████████

25 ██████████████████████."  *Id.* at 48-49, ¶ 85 (third bullet).

26 Levandowski is left to guess which piece—or pieces of "information"—comprises the trade

27 secret.

ANTHONY LEVANDOWSKI'S MOTION FOR A BILL OF PARTICULARS
CASE NO. CR 19-377-WHA

**B.      Sufficient Descriptions**

Trade Secrets 2, 7, and 20

Fortunately, the government has, through its chart, cross-referenced a few trade-secret descriptions that are adequate—namely, TS 2, TS 7, and TS 20.  Each provides enough specificity to identify the trade secret in a manner that enables Levandowski to prepare a defense.

But, even here, where the government has given the particularity required, the government does so trying not to get pinned down, leaving open the possibility that it may change the way it elects to frame these, and any other, trade secrets at any time down the road. This lack of certainty puts a defendant in an unfair and untenable position of trying to figure out how to defend a case that the government believes it can shape-shift at will.

///

### IV. CONCLUSION

Let us be clear:  We are not asking for the government to divulge its trial strategy, its theories of the case, or the evidence it intends to use to prove the elements at trial.  We are simply asking for adequate *clarity* as to the identity of the secrets it alleges were stolen—so Mr. Levandowski can get on with the task of preparing his defense.  And we are asking for this clarity to be delivered with *finality*, to avoid the unfair prejudice of surprise and the undue burden of having to start his preparations over from square one to assess the validity of some "additional, different, or modified trade secret" that the government chooses to adopt down the road.

For all these reasons, this Court should require the government to file a fixed and binding bill of particulars identifying, as to each count, the precise contours of the information contained in the documents that constitute the allegedly stolen trade secrets at issue.  This is the only way to allow Levandowski to prepare a meaningful defense in keeping with due process and Sixth Amendment rights.  And it is the only way this case will move forward without needless delay.


Date:     November 6, 2019                              Respectfully submitted,


                                                        /s/
                                                        _____
                                                        RAMSEY & EHRLICH LLP
                                                        Miles Ehrlich
                                                        Ismail Ramsey
                                                        Amy Craig

                                                        ***Counsel for Anthony Levandowski***