DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

AMIE D. ROONEY (CABN 215324)
KATHERINE L. WAWRYZNIAK (CABN 252751)
ANDREW F. DAWSON (CABN 264421)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Amie.Rooney@usdoj.gov
    Katherine.Wawrzyniak@usdoj.gov
    Andrew.Dawson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO.** CR 19-377 WHA |
| | ) |
| Plaintiff, | ) **UNITED STATES' MEMORANDUM OF LAW** |
| | ) **RE: SPECIFICATION OF TRADE SECRETS IN** |
| v. | ) **CRIMINAL CASES** |
| | ) |
| ANTHONY SCOTT LEVANDOWSKI, | ) Date: November 13, 2019 |
| | ) Time: 1:00 p.m. |
| Defendant. | ) Courtroom: 12, 19th Floor |
| | ) Hon. William Alsup |

The parties appeared before the Court on October 29, 2019, where the Court ordered both parties to file simultaneous briefs as to the legal procedure of when and how the Defendant's request for specificity on the trade secrets at issue should be resolved. [*See* Docket No. 42, Transcript of Proceedings, p. 30 ln 8-10.]   The government hereby files the requested memorandum of law on the subject.

## I.   STATEMENT OF RELEVANT FACTS

In mid-2015, Anthony Levandowski, a Google engineer, developed a secret plan to take some of Google's Project Chauffeur's prized autonomous vehicle technology and employees to Uber.  He was

focused, in particular, on LiDAR, a special laser system that helps self-driving cars "see" what's around them.  At the time, Google was the only company to have developed LiDAR specially designed for self-driving cars; none of Google's LiDAR products was available for sale.  In December 2015, in furtherance of his plan, Levandowski downloaded the Google LiDAR team's entire repository of engineering schematics—specialized computer-assisted design files representing years of painstaking work.  In the same approximate timeframe, November 2015 through his abrupt resignation from Google on January 27, 2016, he downloaded key engineering and business documents from the team's corporate Google Drive directly to his personal MacBook.  The defendant stole over 14,000 files—everything he would need to replicate and install Google's long-range, mid-range, and short-range LiDAR devices on a vehicle.

On August 15, 2019, the Grand Jury returned an eight-page Indictment charging the defendant with thirty-three counts of theft and attempted theft of trade secrets from his former employer, Google, in violation of Title 18, United States Code Sections 1832(a)(1), (2), (3) &(4).  Each count in the Indictment is based upon a specific file.  The Indictment identifies the file name, where it was stored, when it was stolen, and a brief description of the information it contains.  The defendant was arraigned on the Indictment on August 27, 2019, and the Court entered an Interim Stipulated Protective Order on September 23, 2019, governing the production of discovery materials to the defendant.  The very next day, the government made its first production of materials, bearing the Bates No. ASL_TS-000001-0000379, which are copies of the trade secret documents the defendant is alleged to have stolen.  Over the last six weeks, the government has made eight further productions of documents, totaling approximately 664,000 pages, or 195GB of material.

## II.     THERE ARE NO SPECIAL PLEADING OR PROCEDURAL REQUIREMENTS FOR TRADE SECRET CASES

As a general matter, an indictment is sufficient if it, first, contains the elements of the offense charge and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.  *See Hamling v. United States,* 418 U.S. 87, 117 (1974) (citations omitted).  Here, the Indictment meets the requirements of both the Due Process Clause and Rule 7 of the Federal Rule of Criminal Procedure, in

that "it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Zhou*, 679 F.3d 1110, 1113 (9th Cir. 2012), *quoting United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982).

In a criminal trade secret case, the government is not required to make a pretrial offer of proof of the trade secrets. Whether particular information is a trade secret is a question of fact, not law. *See* Ninth Circuit Model Criminal Jury Instruction 8.141C; *United States v. Chung*, 659 F.3d 815, 824-25 (9th Cir. 2011) (evaluating whether there was sufficient evidence at trial that particular documents were trade secrets under the EEA); *United States v. Asgari*, 2018 WL 1151562 (N.D. Ohio Mar. 5, 2018) ("The existence of a trade secret is a central element to a theft of trade secrets charge. It is not an ancillary factual issue unconnected to the merits that the Court may decide before trial."). The statutory definition of trade secrets is broad. Section 1839(3) defines a "trade secret" as follows:

> "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing, if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public [.]

The statute's legislative history also counsels a broad interpretation of the definition. *See* H.R. Rep. No. 104-788, at 12 (1996). While the definition is based in part on the civil definition contained in the Uniform Trade Secrets Act, "there are, though, several critical differences which serve to broaden the [statute's] scope" in the criminal context. *United States v. Hsu,* 155 F.3d 189, 196 (3d Cir 1998).

The key attribute of a trade secret is that the underlying information "not be [ ] generally known to . . . the public." Moreover, the Economic Espionage Act was crafted specifically to include claims of domestic "industrial espionage," such as alleged here, where a "disgruntled former employee [ ] walks out of his former company with a computer diskette full of engineering schematics." *Hsu*, 155 F.3d at 201, *quoting* H.R. Rep. No. 104-788, at 5. The criminal statute contains a heightened *intent* requirement, namely that the government is required to prove that defendant knows that the information he sought to steal is proprietary, but is silent on any other heightened pleading or procedural

requirements with respect to the nature or definition of the trade secret being misappropriated.

Significantly, there is no requirement in federal criminal law comparable to California Code of Civil Procedure 2019.210 requiring an additional level of particularity, and no federal court of which the government is aware has imported or even considered its application to instances where individuals have been charged under Section 1832. In the civil context, the special rule is needed to prevent the filing of frivolous claims and to prevent plaintiffs from using the discovery process as a means to obtain defendants' trade secrets. *See Advanced Modular Sputtering, Inc v. Superior Court*, 132 Cal. App. 4th 826, 833-34 (Cal. Ct. App. 2005). Neither of those considerations applies in a criminal case. The grand jury process provides defendant with procedural protection against frivolous claims. *See Costello v. United States*, 350 U.S. 359, 362 (1956) (the basic purpose of grand jury is "to provide a fair method for instituting criminal proceedings"). And the government does not, generally speaking, take discovery from the defendant. Instead, the Constitution and criminal rules frame the scope of criminal discovery. They require production of items within its possession, custody, or control that the government intends to use in its case in chief, as well items material to preparing the defense. *See* Fed. R. Crim. P. 16(a)(1)(E). As the Court noted on October 29, 2019, "Rule 16 does not say anything about trade secret protection." [Tr. p. 22, ln 3-5.] Nevertheless, the defendant appears to be arguing that the Court should import the requirements of Section 2019.210 into the criminal context, something which is without authority or precedent and ignores the significant differences between criminal and civil trade secret cases.

Similarly, and unlike in the civil context, there is no mechanism in criminal cases akin to Summary Judgment allowing the defendant to attack (and the Court to rule on) the sufficiency of the evidence as to any individual element pre-trial. *See United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) ("a defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence."); *United States v. Critzer*, 951 F.3d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in criminal cases."). While it is understandable that the defendant (and the Court, for perhaps different reasons) may wish to narrow the issues to be addressed at trial, the law does not provide for imposing additional procedural requirements on the government based simply on the complexity of the evidence or to allow the defendant to conserve

1    resources for himself or his counsel in preparing for trial.  To do so would elevate the rights of a

2    defendant in one narrow category of criminal cases over the rights of the larger universe of defendants in

3    a way unsupported by the law or the Constitution.

4    **III.    DEFENDANTS IN CRIMINAL TRADE SECRET CASES MUST EMPLOY STANDARD
         CRIMINAL PROCEDURES TO CHALLENGE AN INDICTMENT AND THE
5        GOVERNMENT'S EVIDENCE**

6        **A.    A Motion Under Rule 7(f) for a Bill of Particulars**

7        Federal Rule of Criminal Procedure 7(f) permits a defendant to seek a bill of particulars, only

8    where appropriate, that is, "to inform the defendant of the nature of the charge against him with

9    sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the

10   time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the

11   same offense." *United States v. Giese,* 597 F.2d 1170, 1180 (9th Cir. 1979) (citations omitted).  Here,

12   the defendant has recently brought the motion for a bill of particulars and is seeking a "fixed and

13   binding" statement from the government "identifying, as to each count, the precise contours of the

14   information contained in the document that constitute the . . . trade secret at issue.". [Docket No. 52,

15   Defendant's Motion for Bill of Particulars, at p. 14.][1]

16       A bill of particulars is not intended to serve as a discovery device or to compel the government's

17   disclosure of the factual proof planned for trial.  *See United States v. Dunn,* 841 F.2d 1026, 1029 (10th

18   Cir. 1988); *Giese,* 597 F.2d at 1181 ("Appellant's request for the 'when, where, and how' of every act in

19   furtherance of the conspiracy was equivalent to a request for complete discovery of the government's

20   evidence, which is not the purpose of the bill of particulars.").  Despite protestations that it is not asking

21   "the government to divulge its trial strategy, its theory of the case, or the evidence it intends to use to

22   prove the elements at trial" [Def. Mtn at 14], defendant's demand for "*finality*" in the government's

23   descriptions of the trade secrets at issue before a trial date has even been set, let alone well in advance of

24

25       [1] As will be filed under separate cover, the government opposes the defendant's motion on the
     grounds that (1) the Indictment adequately apprises the defendant of the charges against him, including
26   both a document description and file path for specific identification; (2) the government has provided
     the defendant with voluminous discovery, totaling approximately 664,000 pages, including the charged
27   documents and files themselves as well as numerous FBI memoranda of interviews, far in excess of
     what is required under Rule 16 of the Federal Rule of Criminal Procedure; and (3) the government has
28   supplemented its discovery with indexes and a letter containing bates number citations to specific
     documents relevant to understanding the nature of the trade secrets.  [*See* Def. Mtn. at Exhibit A.]

1   any other deadline the Court may consider, amounts to the same thing.  The defendant has cited no

2   binding authority for inappropriately seeking, at the very beginning of litigation, to require the

3   government to "weave the information at its command into the warp of a fully integrated trial theory for

4   the benefit of the defendant [. . .]" and somehow *conclusively* restrict (again, without authority) the

5   government to develop its evidence no further.  *See United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir.

6   1971).  Such a requirement would be an unprecedented expansion of Rule 7.

7       While the government acknowledges that the discovery is voluminous, much of that volume is

8   attributable to the related civil matter, *Waymo v. Uber,* which, as the government has stated, only loosely

9   maps onto the government's allegations and is not central to the government's proof.  Courts have

10  established that "[f]ull discovery will obviate the need for a bill of particulars." *United States v. Clay*,

11  476 F.2d 1211, 1215 (9th Cir. 1973) (affirming denial of motion for bill of particulars where defendant

12  received full discovery); *see also Long*, 706 F.2d at 1054 (finding no abuse of discretion in denial of bill

13  of particulars where trial court granted full discovery).  The government has provided to the defendant a

14  chart which describes how documents and statements produced in the civil case may inform the parties

15  about the victim company's view of the underlying technology, but the government is not bound by that

16  analysis for a very important reason:  unlike Waymo, the government does not have to prove (nor has it

17  alleged) actual use of any aspect of the stolen material in a competing product.

18      Less precise theft of trade secret indictments have survived motions for bills of particulars.  *E.g.*

19  *United States v. Latimore*, 2009 WL 3876172 (E.D. Mich. 2009) (denying motion for bill of particulars

20  where trade secret indictment tracked the language of 1832 but did not list specific documents

21  containing trade secrets); *United States v. Groves,* 2013 WL 5592911 (W.D. Kentucky Oct. 10, 2013)

22  (same); *United States v. Dimson*, 2006 WL 8444641 (N.D.G.A. Sept. 21, 2006) (not requiring

23  government to specify trade secrets at issue in a conspiracy to take unspecified documents from Coca

24  Cola and sell them to Pepsi).  The Indictment in this case does far more than allege a broad category of

25  trade secret information.  *Cf. United States v. Case*, 2007 WL 1746399 (S.D. Miss. June 5, 2007)

26  (dismissing indictment that described trade secret only by category and government's theory was that

27  defendants stole an "entire universe" of information).  In every count, the government has instead

28  selected a specific document or design drawing from the universe of possibilities, together with both a

1   description which highlights a particular aspect of the file and, as of November 1, 2019, an extensive

2   chart listing by bates number additional discovery materials which further describe the substance of

3   those documents. The government has also, as of the filing of this document, completed its Rule 16

4   discovery.  Taken together, all of these disclosures obviates the need for the bill of particulars, as will be

5   more fully set forth in the government's opposition to defendant's motion.

6       **B.   Available Motions Under Fed. R. of Crim. P. 12(b)(3)(B)**

7           As in other criminal cases, the defendant may file any motions under Rule 12 of the Fed. R. of

8   Crim. P. to dismiss an indictment he believes to be defective, on the various articulated grounds of

9   duplicity, multiplicity, lack of specificity, and failure to state an offense.  The government takes no

10  position at this time as to the propriety of such motions in the instant case, other than to reiterate that the

11  government has complied with the pleading standards in Rule 7 and would vigorously oppose any

12  specific allegation that the instant Indictment is deficient.

13      **C.   Expert Disclosures and Daubert Motions**

14          It is likely in a criminal trade secret case that one or both parties may present testimony *at trial*

15  through expert witnesses.  *See* Fed. R. Evid. Rules 702, 703, and 705.  For the government's part, those

16  experts may or may not be insiders from the victim company.  Rules 16(a)(1)(F) and 16(b)(1)(C) of the

17  Fed. R. Crim. P. govern the disclosure of written summaries of expert testimony to be used at trial by the

18  government and the defendant, respectively.  If the witnesses are company insiders, the government is

19  likely to present them as both fact and expert witnesses, as this Court has permitted in other cases. [*See*

20  *United States v. Brugnara,* CR14-0306-WHA, Final Order Re: Motions in Limine, Docket No. 224, pp.

21  3-4.] ]  For all such prospective witnesses identified thus far, the government has already produced FBI

22  reports of their prior statements about the documents and trade secrets at issue (as well as materials from

23  the civil case file) which would serve in large part as the basis for their trial testimony.

24          It is well within the discretion of the Court to specify more precisely when such disclosures are

25  each due, as was the case in the Court's initial proposal here, which set a May 7, 2020 deadline—more

26  than 4 months before trial—for production of government expert reports and summaries.  The

27  government has expressed its agreement with that proposed schedule.  The defendant seems to assert

28  that waiting for the expert disclosure in a trade secret case is *per se* unreasonable because he needs to

1   know at the outset what kind of expert to engage – as if the universe of experts possible on this

2   specialized autonomous technology is infinite.  In fact, the pool is very limited.  Or, if it is the case that

3   the defendant wishes to claim that the documents cannot contain trade secrets because all of the

4   information contained therein (including the way in which it is put together and or the compilation of the

5   information into a single document) is generally known or easily discernible as basic engineering, they

6   can seemingly hire any engineering expert to so opine.

7        The rules, however, do not permit, as the court is aware, any expert presented by either the

8   government or the defendant to usurp the jury's province and opine on the ultimate question of fact –

9   whether the documents at issue contain trade secrets.  Thus, following disclosure of the respective

10   experts, the Court may entertain *Daubert* motions to explore the bases for the prospective expert's

11   testimony and exercise its gatekeeping function to ensure that the jury is presented with relevant and

12   reliable evidence.  *Daubert,* however, does not function as a means to test pre-trial whether the

13   government can meet the elements of the crime as to a specific count and thereby dismiss those counts.

14        **D.    Motions for Judgment of Acquittal Under Rule 29**

15        As in every case, the government's failure to meet its burden of proof as to any element of the

16   charged offenses would allow the Court to dismiss those particular counts.  In the trade secret context,

17   that may mean that should the government fail to prove beyond a reasonable doubt *inter alia* (1) the

18   existence of a trade secret in a particular document or design schematic (or that the document as a

19   compilation constitutes a trade secret for the way in which all the component information is put

20   together); (2) the owner of the trade secret employed reasonable measures to keep the information

21   secret; and (3) the information derived independent economic value from its secrecy, the defendant

22   would be not guilty of misappropriating that particular document.  The defendant is justified in not

23   wanting to be ambushed at trial by unknown theories or strains of evidence, but the rules and procedures

24   as they currently exist for all criminal cases protect the defendant from that remote possibility.  Neither

25   does the government wish for trial to be delayed or derailed unnecessarily based on some late disclosure.

26   The government for its part has demonstrated its commitment to abide by its responsibilities, provide

27   more disclosures than required, and continue to work with the defendant within the present structure to

28   ensure he has what he needs to be prepared for trial.

**IV.    CONCLUSION**

For all of the foregoing reasons, the government requests that the Court enter its proposed procedural scheduling order without any modifications or delay.


DATED:  November 11, 2019                                  Respectfully submitted,

                                                          DAVID L. ANDERSON
                                                          United States Attorney

                                                          /s/ *Amie D. Rooney*

                                                          _____
                                                          AMIE D. ROONEY
                                                          KATHERINE L. WAWRYZNIAK
                                                          ANDREW F. DAWSON
                                                          Assistant United States Attorneys