**Pages 1 - 11**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
PAUL MARTEL, an individual,    )
                               )
          Plaintiff,           )
                               )
  VS.                          )    NO. C 19-02715 WHA
                               )
HEARST COMMUNICATIONS, INC., a )
Delaware corporation, and      )
Does 1 through 50, inclusive,  )
                               )
          Defendants.          )
                               )
```

San Francisco, California
Thursday, August 22, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        WEISENBERG FIRM, PLLC
        535 Mission Street, 14th Floor
        San Francisco, California 94105
  **BY:  BENJAMIN D. WEISENBERG**
      **ATTORNEY AT LAW**

For Defendant:
        THE HEARST CORPORATION
        Office of General Counsel
        300 West 57th Street, 40th Floor
        New York, New York 10019
  **BY:  NATHANIEL S. BOYER**
      **ATTORNEY AT LAW**

REPORTED BY:  Ana M. Dub, RDR, CRR, CCRR, CRG, CCG
            Official Reporter, CSR No. 7445

| | |
|---|---|
| 1 | **Thursday - August 22, 2019**                                          **11:05 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |

4    **THE COURT:** Paul Martel versus Hearst Communications.

5    **THE CLERK:** Calling Civil Action 19-2715, Martel
6  versus Hearst Communications, Inc.

7       Counsel, please step forward and state your appearances
8  for the record.

9    **MR. WEISENBERG:** Good morning, Your Honor. Benjamin
10 Weisenberg of the Weisenberg Firm for plaintiff, Paul Martel.

11   **THE COURT:** Okay.  Please come up here to the lectern
12 so it'll be easier for the court reporter.

13      Give me your name again.

14   **MR. WEISENBERG:** Benjamin Weisenberg of the Weisenberg
15 Firm, Your Honor.

16   **THE COURT:** All right.

17   **MR. BOYER:** Good morning, Your Honor.  Nathaniel Boyer
18 of the Hearst Corporation for defendant Hearst Communications,
19 Inc., the publisher of the *San Francisco Chronicle*.

20   **THE COURT:** So what's the essence of this case?

21   **MR. WEISENBERG:** Misclassification case, Your Honor.
22 The issue is a single plaintiff claiming misclassification as
23 an independent contractor, as opposed to an employee, and
24 seeking damages that result from that misclassification under
25 assorted California labor laws.

| | |
|---|---|
| 1 | **THE COURT:**  And the work that Mr. Martel did was what? |
| 2 | **MR. WEISENBERG:**  He's a newspaper deliveryman. |
| 3 | **THE COURT:**  Okay. |
| 4 | **MR. WEISENBERG:**  He delivers the newspapers to |
| 5 | people's homes who read the paper. |
| 6 | **THE COURT:**  When I was a kid, I had that very job. |
| 7 | **MR. WEISENBERG:**  Sure. |
| 8 | **MR. BOYER:**  And you were probably an independent |
| 9 | contractor, Your Honor, not an employee. |
| 10 | **THE COURT:**  In those days, I had no clue what I was. |
| 11 | I just rolled -- I picked up the papers at the corner; I |
| 12 | snipped the wire; I rolled them all up; I put them in this |
| 13 | canvas sack; I got on my bicycle and I delivered them. |
| 14 | I was pretty good at throwing them right on the porch as I |
| 15 | went at high speed to avoid the dogs that were after me. |
| 16 | So that went on for a couple of years, and finally, then I |
| 17 | graduated from high school. |
| 18 | But is that kind of the way it still works?  Or does he |
| 19 | have a bicycle?  How does he -- |
| 20 | **MR. WEISENBERG:**  It is now a car, Your Honor, as |
| 21 | opposed to a bicycle. |
| 22 | **THE COURT:**  All right. |
| 23 | **MR. BOYER:**  I have a similar experience playing the |
| 24 | video game Paperboy, Your Honor, if you're familiar with that |
| 25 | one.  It's essentially the same thing. |

1  But, no.  If I can elaborate a little bit on the issues in
2  this case.
3           **THE COURT:**  Yes.  Give me a --
4           **MR. BOYER:**  I think plaintiff's counsel accurately
5  said that this is, of course, a misclassification case.
6      It's important to note that this case comes amidst a lot
7  of development in California law on misclassifications issues.
8  Your Honor perhaps is familiar with last year's opinion from
9  the California Supreme Court in *Dynamex*.
10          **THE COURT:**  Yes.
11          **MR. BOYER:**  Right.  Yes.
12          **THE COURT:**  Three-factor test.
13          **MR. BOYER:**  The three-factor test; the ABC test.
14  Exactly.
15     At present, I understand there's a lot of activity in
16  Sacramento on the legislative front as to the extent to which
17  AB5 -- the extent to which that will be codified.  There's a
18  bill that was passed in the Assembly or at least has been moved
19  out of the Assembly to the Senate.
20     Bottom line where I'm going with all this is that, you
21  know, the parties have submitted a joint statement which
22  indicates that we certainly think this is a fairly discreet
23  case and can move forward apace with discovery; but I could
24  certainly see, in the coming months, some clarification,
25  whether it be on the legislative front or even from the

1  California Supreme Court, to whom the Ninth Circuit has

2  recently indicated it is going to refer the issue of

3  retroactivity of *Dynamex*.

4      **THE COURT:**  I saw that, yes.

5    So, nevertheless, we've got a case.

6      **MR. BOYER:**  We do.

7      **THE COURT:**  So why don't we just move forward, and if,

8  before I have -- maybe they'll clarify things in such a way

9  that -- how much money is at stake here?

10     **MR. WEISENBERG:**  Several hundred thousands of dollars,

11 Your Honor.  So we're talking about four hours of overtime

12 every single day; plus all the associated meal and rest breaks;

13 the pay stub violations; the final pay violations.

14   So just so Your Honor knows, the parties participated in a

15 full-day mediation prior to the action being initiated.  So we

16 have checked -- and that's something we mentioned in the joint

17 letter that we wanted to just discuss with Your Honor.

18     **THE COURT:**  What is your mediation -- do you still

19 want to do private mediation?

20     **MR. WEISENBERG:**  Your Honor, based on counsel's

21 conversations, we don't think that mediation at this time would

22 be an effective use of everyone's time, again, given we've just

23 been through that process but, rather, try to use the discovery

24 process to maybe flesh out the likelihood of the success on the

25 claims versus the likelihood of the defenses on the claims and

1   see if mediation at the end of the discovery process would be a
2   more effective use of everyone's time, given that we've already
3   gone through a full day with a private mediator.
4        There were some other issues at stake in that mediation
5   that --
6              **THE COURT:**  Well, I've got to refer you to some kind
7   of ADR program.  I can't just let it drift.  So if you don't
8   want private mediation, I'll refer you to our ADR unit.
9              **MR. WEISENBERG:**  It is plaintiff's preference for
10  private mediation, but timing is the only issue, that being at
11  the end of discovery as opposed to now, Your Honor.
12             **THE COURT:**  I could give you more time to do -- both
13  of you wanted a reasonably quick schedule, I think.
14       Well, let me give you the schedule; then we'll come back
15  to that point.  You ready?
16             **MR. WEISENBERG:**  Yes, Your Honor.
17             **THE COURT:**  Have you done your initial disclosures?
18             **MR. WEISENBERG:**  Yes, Your Honor.
19             **THE COURT:**  Well, I am going to show you how
20  reasonable I am.  I'm going to give you until August 30 to make
21  sure you've done it right.
22             **MR. WEISENBERG:**  Very well.
23             **THE COURT:**  Because if you didn't do it right, what
24  will happen?
25             **MR. WEISENBERG:**  It'll come back to bite us.

1  **THE COURT:** No. You don't get any damages if you
2  didn't list your damages. You don't get to use a witness whose
3  names and addresses you didn't put in, the contact info.
4  You've got to read the rule. The rule is pretty clear on
5  what you have to say. But lawyers like to cheat on the rules,
6  and they don't put down the info.
7  So I'm giving you till August 30th to do it right.
8  We had a case the other day where the plaintiff got to go
9  to trial but only to seek one dollar in nominal damages because
10 they had neglected to put, in their Rule 26 disclosure, the
11 damages.
12 **MR. WEISENBERG:** Well, Your Honor, in regards to the
13 Rule 26 --
14 **THE COURT:** That means you have to do it.
15 **MR. WEISENBERG:** Yes, Your Honor.
16 **THE COURT:** There's no exceptions.
17 **MR. WEISENBERG:** There's a number -- there's a number
18 of documents that we will need from defendants to accurately
19 calculate the damages. If Your Honor would like us to do an
20 estimate, we certainly can do an estimate; but because it's a
21 piece-rate case, the damages will be extremely complicated; and
22 the only way for us to do it accurately is to obtain the
23 information from the defendants.
24 **THE COURT:** I don't bless that. I'm not going to say
25 "no" to it, but I'm not going to say "yes" to it. And if I

1   determine later you could have put in a number, out, o-u-t,
2   because it's just a gimmick.
3       See, the lawyers like to say, "Proof according to expert
4   at trial."
5       No way.  No way.  You've got to figure that out now.
6       But if you convince me later that, yes, you, in fact,
7   could not do it, then you've got to do it to the extent you
8   can.
9       You listed a lot of those things.  Like overtime, he knows
10  how many hours he worked overtime.
11      All right.
12          **MR. WEISENBERG:**  If I may, Your Honor, yes, but to
13  calculate that overtime, it'll be on a piece-rate calculation;
14  so we'll have to know the number of deliveries to calculate the
15  overtime.
16          **THE COURT:**  Didn't he keep records?
17          **MR. WEISENBERG:**  The records would be in the
18  defendant's possession.
19          **THE COURT:**  Well, he should have some records, maybe.
20  At least some way to estimate.
21      Okay.  Leave to add any new parties or pleading amendments
22  must be sought by November 21.
23      The private mediator must be selected and on calendar by
24  August 30, and your mediation must be completed by December 20.
25      Now, that December 20 date I'll come back to because I may

1  give you more time on that.
2       Fact discovery cutoff will be March 31.
3       The last date to designate expert testimony, if you have
4  the burden of proof, will be March 31.
5       This, of course, is next year.
6       And then the last date to file a summary judgment motion
7  will be May 7.
8       Final pretrial conference will be July 8th, and a jury
9  trial on July 20, next year.
10      Then that's it.  I'll let you try to talk me out of any of
11  that.  Any complaints?  Any heartburn?
12          **MR. BOYER:**  I think we're comfortable with that
13  schedule at this time, Your Honor.
14          **MR. WEISENBERG:**  The schedule is fine as well,
15  Your Honor.
16          **THE COURT:**  It's pretty close to what you wanted.
17  It's actually longer than what you wanted.
18          **MR. BOYER:**  We're certainly not going to object to
19  that.
20          **MR. WEISENBERG:**  The only concern that plaintiff has
21  is what we just discussed, but we'll endeavor to do the most
22  accurate possible damages calculation at this time, subject
23  to -- we're going to need a number of records from the
24  defendants to make sure that our damages calculations are
25  accurate.

1   **THE COURT:**  Well, again, that sounds good in theory,
2   but it could turn out that you could have done something.  So
3   you've got to do the best that's possible with the information
4   that you have.  And that, I insist on.
5       So, all right.  What date do you want to complete your
6   mediation by?
7   **MR. WEISENBERG:**  Your Honor, may we have the close of
8   fact discovery?
9   **MR. BOYER:**  You said -- I believe you set the close of
10  fact discovery at March 31st.  Is that correct?
11  **THE COURT:**  All right.  I'll give you till then.  I
12  think that's --
13  **MR. BOYER:**  I'm inclined to go a little bit -- I think
14  it would -- it might benefit to have a little bit more time.
15  But I hope that by the time we get into, say, at least January,
16  we will have a good sense of what's going on in this case.
17  **THE COURT:**  I don't see how you don't even know right
18  now, because the employee knows what he did.  I don't get it.
19      But I'm going to give you till March 31.
20  **MR. WEISENBERG:**  Thank you, Your Honor.
21  **THE COURT:**  All right.  Anything else you want on this
22  schedule?
23  **MR. WEISENBERG:**  Nothing from the plaintiffs,
24  Your Honor.
25  **MR. BOYER:**  Nothing from defendant, Your Honor.

1       **THE COURT:** This is the *Chronicle*? Which newspaper?

2       **MR. WEISENBERG:** Yes, it's the *Chronicle*. There are some other newspapers beyond the *Chronicle* as well that Hearst Communications is part of, but the vast majority of it is the *Chronicle*.

6       **THE COURT:** All right. Well, good luck to both sides. Thank you.

8       **MR. WEISENBERG:** Thank you, Your Honor.

9       **MR. BOYER:** Appreciate it, Your Honor.

10       (Proceedings adjourned at 11:15 a.m.)

11       ---o0o---

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, April 3, 2020

*[signature: Ana M. Dub]*

Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG
Official Reporter, U.S. District Court